## L. C. CALTRIDER vs. EDWARD O. WEANT.

*Negligence of Attorney—Filing of Mechanic's Lien—Evi-*
*dence—Estoppel to Assert Lien—Cross-*
*examination of Witness.*

An attorney is liable to his client for loss caused by his fail-
ure to exercise reasonable care and skill in carrying out the
client's instructions.            ·                      p. 340

A prayer that "under the pleadings in this case there is no
legally sufficient evidence from which the jury may find for the
plaintiff and their verdict must be for the defendant" is insuffi-
cient as a variance prayer, under Code, art. 5, sec. 9A.    p. 344

In an action against an attorney on account of his failure to
file a mechanic's lien for materials furnished by plaintiff to a
contractor on a building, *held* that the evidence showed that
plaintiff had served notice on the owner of his intention to
claim a lien, as required by Code, art. 63, sec. 11, so that the
failure to file the claim was a source of loss to plaintiff.

pp. 344-346

One was not estopped to claim a mechanic's lien for mater-
ials furnished a contractor for the erection of a building be-
cause, being an officer of a building association which had made
a loan for the construction of the building, he had allowed the
proceeds of the loan to be withdrawn, on the joint order of the
borrower and another officer of the association, and paid to the
contractor, without requiring payment for the materials, it not
appearing that he knew when withdrawals were to be made, or
that he could have prevented them.            pp. 347-350

In order to assert a lien for materials furnished in the erec-
tion of a house, it is not necessary to show that the material was
actually used in the house.                      p. 350

In an action against an attorney for failure to file a mechan-
ic's lien, as instructed to do, wherein he claimed that he had
mailed the papers to the clerk of the court, *held* that, he having
testified that he had previously recorded papers in that court,
it was proper to cross-examine him as to whether, in those pre-

vious cases, he had received a ticket, or had sent the recording charges with the papers, or had received a bill therefor, as an omission in this respect might have been regarded by the jury as calling for further inquiry by him as to whether the clerk had received the mechanic's lien papers.                    pp. 350, 351

For a like reason it was error to exclude testimony by the clerk as to the practice in his office, upon receipt of papers for record, in making charges and sending bills.                    p. 351

*Decided February 6th, 1925.*

Appeal from the Circuit Court for Howard County (FOR-SYTHE, J.).

Action by L. C. Caltrider, trading as L. C. Caltrider & Son, against Edward O. Weant. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*Gwynn Nelson* and *J. Howard Murray,* submitting on brief, for the appellant.

*James Clark,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The cause of action in this case is the alleged negligence of the appellee, a practicing attorney at law, in his failure to obtain a mechanic's lien securing the payment of a claim for materials furnished the contractor by the appellant, which claim had been placed in his hands for collection, with directions given to obtain the mechanic's lien.

When business is committed to an attorney by his client, and for which the client is expected to make compensation to the attorney, the law governing such a contract requires that the attorney act diligently in protecting and preserving his client's interest. In 2 *R. C. L.* 1012, it is stated: "The law

implies a promise on the part of attorneys that they will
execute the business entrusted to their professional manage-
ment with a reasonable degree of care, skill and dispatch, and
they are liable to an action if guilty of a default in either
of these duties whereby their clients are injured, and this
liability of the attorney is not affected by the client's dili-
gence or the want of it, unless stipulated by special contract."
In 6 *C. J.* 704, it is said: "An attorney's duty, where he is
especially instructed, is to follow the instructions of his client
except as to matters of detail connected with the suit, and
he is liable for all loss resulting from his failure to follow
such instructions with reasonable promptness and care."
And in 2 *R. C. L.* 1014: "Whenever an attorney disobeys
the lawful instructions of his client and a loss ensues, he is
responsible for such loss."

This general doctrine has been recognized and laid down in
a number of cases decided by this Court. *Cochrane v. Little,*
71 Md. 323; *Watson v. Calvert Bldg. & Loan Assn.,* 91 Md.
25. In the *Cochrane* case this Court adopted with approval
the language of Lord Chancellor Cottenham in delivering the
opinion in the case of *Hart v. Frame,* 6 Cl. & Fin. 193, 209:
"A client who has employed an attorney has a right to his
diligence, his knowledge, and his skill; and whether he had
not so much of these qualities as he was bound to have, or
having them, neglected to employ them, the law properly
makes him liable for the loss which has occurred to his
employer." The language used in the *Calvert Bldg. & Loan
Association* case, *supra,* was: "An attorney at law is liable
to his client for the possession of a reasonable degree of
skill in his profession as well as for the exercise of a like
degree of diligence in the conduct of the transaction about
which he is employed. If he fail in either respect he will
be responsible to his client for the loss which the latter may
sustain therefrom. This responsibility of the attorney, al-
though ordinarily enforced by an action of case for negligence
in the discharge of his professional duties, in reality rests
upon his employment by the client and is contractual in its
nature. Before the attorney can be made liable, it must

appear that the loss for which he is sought to be held arose from his failure or neglect to discharge some duty which was fairly within the purview of his employment."

The facts in the instant case are substantially that Miss Florence E. Carr, being the owner of a tract of land in Reisterstown, Baltimore County, late in the year 1921 determined to have built a residence on her property. At the time she had $1,500 and applied to the Reisterstown Thrift & Loan Association for a mortgage of $2,500, so that with this amount, in addition to her own money, she might pay for the building proposed to be constructed. The association agreed to make the loan upon the condition that the $2,500 loaned by it should be pooled with the money of Miss Carr and placed in the Reisterstown Savings Bank, subject to the joint check of Miss Carr and the chairman of the building committee appointed by the association for the purpose of supervising the payment of said money. This arrangement was perfected by the appointment of a building committee, consisting of Welsh (chairman), Marshall and Wolf, and the money was placed, as agreed, in the bank, to be drawn out for the purpose of paying for materials and labor used and expended in the construction of the building, upon the check of Miss Carr, countersigned by Welsh, chairman of the building committee.

The contract or agreement was then made by Miss Carr with William H. Guest for the erection of the dwelling house, and a large portion of the lumber and building material entering into the construction was furnished to the contractor by L. O. Caltrider, the appellant, the total price of which was $1,586.20, of which amount the appellant had only received $714.24, leaving a balance then due of $871.96. A claim for this balance was in December, 1921, or January, 1922, placed in the hands of the appellee, an attorney, for collection, for the reason that the appellant had been unable to get further payments on this account from Guest, the contractor. At the time the claim was placed in the attorney's hands, the appellant, together with a Mr. Ducker and a Mr. Naylor, two other gentlemen who had claims against the

contractor, went to the appellee's office in Westminster, and consulted with him in regard to the collection of their respective accounts by filing a mechanic's lien against the contractor and Miss Carr. At first the appellee expressed doubt as to being able to maintain a mechanic's lien, for the reason that the appellant was a member of the building association which had loaned the money to be pooled with the money of Miss Carr and paid out upon the signature of Miss Carr and the counter-signature of the chairman of the building committee of the association; but after investigation of the law the appellee decided that a mechanic's lien would lie, but advised that efforts be made to collect the money without resorting to that procedure at that time. This advice was acted upon, and the attorney made frequent trips from Westminster to Reisterstown to attend meetings of the building association, in an effort to collect appellant's claim and those of Mr. Ducker and Mr. Naylor. On February 14th, 1922, he was successful in collecting from the building association and Miss Carr the sum of $950, which on April 19th he apportioned among the three claims which he represented, paying to the appellant as his proportionate part the sum of $540.20, thereby reducing the balance due the appellant on account of his material claim to the sum of $331.76.

Shortly after the $950 was collected by the appellee, it was decided by the appellant, and the appellee was so instructed, to proceed to secure the mechanic's lien for the balance then due. The appellee prepared the notice to Miss Carr, the owner, as required by section 11 of article 63 of the Code of Public General Laws of Maryland, which notice was dated March 7th, 1922, and delivered to the appellant, to be by him personally served upon the owner, Miss Carr. This was accordingly done by the appellant within the time prescribed by said section 11, being within sixty days after furnishing the last material, which was furnished on January 12th, 1922. Nothing further was done by the appellant in reference to the laying of the lien, but this matter was left with the attorney to attend to, until, on or about July 31, 1922, it was discovered that no lien was of record in the

clerk's office of Baltimore County, and Mr. Weant at that time was so informed by the appellant and officers of the building association. Upon being acquainted with this fact, Mr. Weant expressed surprise, and told appellant that he had prepared the papers and sent them by mail from Westminster, directed to the clerk of the Circuit Court for Baltimore County, Towson, with instructions to file, and that he could not understood why they were not of record. Section 23 of article 63 provides that: "Every such debt shall be a lien until after the expiration of six months after the work has been finished and materials furnished, although no claim has been filed therefor, but no longer unless the claim shall be filed at or before the expiration of that period."

In order to make effective a lien against the property of Miss Carr, who was the owner and not the contractor, it was necessary to give her notice of intention to file a lien within sixty days from January 12th, the day upon which the last material was furnished, and upon giving this notice a lien was created for the period of six months from January 12th, 1922, or until July 12, 1922, and in order to continue the lien from and after that date it was necessary that the lien be filed and recorded in the office of the clerk of the Circuit Court for Baltimore County. As a matter of fact, no lien was filed and recorded as prescribed by said section 23, and the six months within which it could be filed having expired on July 12th, 1922, no lien longer existed or could be subsequently obtained.

Upon the appellant ascertaining that no lien had been actually filed, he demanded of Weant that he be responsible for the balance due him, which demand or request was refused, and appellant, upon the refusal of the appellee to guarantee the payment, thereupon informed the appellee that he would hold him responsible and would bring suit against him for the balance due. This suit was first brought in the Circuit Court for Carroll County, and upon motion of the plaintiff was removed to the Circuit Court for Howard County for trial, in which court, on April 7th, 1924, the case was tried before a jury. After the conclusion of the

testimony offered in behalf of the plaintiff and defendant, the plaintiff offered four prayers and the defendant four prayers; whereupon the court granted the first prayer of the defendant and did not act upon any of the other prayers offered or the special exceptions; whereupon the plaintiff excepted to the granting of the defendant's first prayer, and the ruling of the court in this respect constitutes the tenth bill of exception. There are ten exceptions contained in the record, and the other nine are to rulings of the court upon the evidence during the progress of the trial.

The defendant's first prayer, granted by the court and constituting the tenth exception, will be first considered. This prayer is as follows: "The defendant prays the court to instruct the jury that under the pleadings in this case there is no legally sufficient evidence from which the jury may find for the plaintiff and their verdict must be for the defendant." The appellant contends that the granting of this prayer was error, for the reason that it is a variance prayer, and is not in accord with the provisions of chapter 110 of the Acts of 1914, now codified as section 9A of article 5 of the Code of Public General Laws. Whether or not the contention of the appellant above set forth is correct is of no consequence in the view we take of this case. If the prayer granted by the lower court was intended as a variance prayer, it should not have been granted because it did not comply with the statute. On the other hand, if this prayer was intended as a general demurrer to the evidence, and in our opinion it was so intended, it was also improperly granted for the reason that we find from the record sufficient evidence to have submitted the case to the consideration of the jury. We will proceed to consider the case upon the theory that this prayer granted by the court was intended to be, and was, treated by the lower court as being a general demurrer to the evidence prayer.

The appellee's first contention is that there is no evidence in the record which shows that the notice required by section 11 of article 63 to be served upon the owner, Miss Carr, and which was prepared by the appellee and delivered to the appellant for service upon Miss Carr, was in fact served

within sixty days from January 12th, 1922, as prescribed
by the statute, and that it was incumbent upon the plaintiff
to show that the alleged negligence of Weant in not filing
and having recorded the mechanic's lien resulted in injuring
the plaintiff, and that if the notice of intention to file a lien
was not served upon Miss Carr within the time prescribed by
the statute, no lien could be legally obtained, and therefore
it was of no consequence to the appellant whether Weant was
negligent or not in the failure to file and have recorded a lien
within the six months period. If there is no evidence in the
record legally sufficient for the jury to find that the notice
was served upon Miss Carr by the appellant within sixty
days from January 12th, 1922, this contention of the
appellee is unanswerable, and it therefore becomes necessary
to examine the testimony as contained in the record in re-
spect to the time of service of the notice of intention to claim
a lien. The only evidence in the record on this point is con-
tained in the testimony of the appellant, and is as follows:

"Q. What did you employ him to do? A. I asked him
whether there could be a lien filed on the property. After
his investigation of the matter he said there could and he
made out notices. Three of us went together. We had dif-
ferent claims, the plumber and electrician had claims and we
had some. He made notices out for us all and advised us to
serve them in person on Miss Florence E. Carr, the owner
of the property, or if we did not do that we had better do it
by registered mail and to be sure to get a return receipt to
know it reached their hands. We all three of us delivered
our lien notices to Miss Carr personally in Baltimore, so as
to be sure the matter was served according to his direction.
Q. Did Mr. Weant tell you you had to serve notice on the
owner of your intention to lay a lien? A. Yes, sir. Q. Did
he prepare the notice to that effect? A. Yes, sir. Q. When
did he prepare it for you? A. March 7, 1922. Q. Have
you that paper there A. Yes, sir. Q. Who delivered that
paper? A. I delivered it. (Paper in question shown coun-
sel for defendant.) Q. Was that paper served on Miss
Florence Carr? A. Yes, sir, I served it. Q. By whom? A.

Myself. Q. Did Mr. Weant give you any instructions how to serve that paper, if so, what? A. He said I should deliver it in person, which was preferable, but if I didn't, to register it and see that I got a return receipt card. Q. What did Mr. Weant tell you about filing a lien against this job? (Objected to.) (The Court): Go ahead. A. He told me there could be a lien filed and that was the notice. Q. How long before the date of this paper did you employ Mr. Weant. Do you recall that? A. It was a day or two before that paper was made out, to the best of my knowledge."

Further testifying, witness said that when the claim was first placed in Mr. Weant's hands the same amounted to eight or nine hundred dollars, part of which Mr. Weant collected and remitted, less his charge of ten per cent., and that the money had been collected by Mr. Weant prior to the serving of the lien notice, his recollection being that $540 was collected. The witness identified the letter dated April 19th, 1922, from Mr. Weant, and said that the amount which Mr. Weant collected was made in one payment, which was not remitted until three months after it had been collected and that the two other gentlemen who also placed claims in Mr. Weant's hands had become uneasy about their money and asked the witness for some information concerning the same; that the money had been collected about three months before the date of the letter and that he had employed him before that time.

"Q. Do you want to say anything? A. If permitted I will tell you; I will clear it up. I employed him to take this lien a day or two previous to the time it was served. He was employed to take my case three months before the lien notice was made; but I had him take the lien. It was only a day or two when that lien was issued I employed him. Q. When you first employed him to collect the account? A. Yes, sir. Q. When was that? A. I later resolved to take the lien."

This testimony of the appellant the jury was entitled to believe if they saw fit, and was to the effect that he employed or instructed the appellee to take the lien a day or

two before the notice, which was dated March 7th, was made out; that the appellee was employed to take this lien a day or two previous to the time it was served. The one date that is fixed by this testimony is March 7th, 1922, the date of the notice, and the witness testified that he had instructed the appellee to lay the lien a day or two before the notice was made out, and further, that the employment with the instruction to lay the lien was a day or two previous to the time the notice was served, thereby fixing the time of service as a day or two after the instruction given, which time of instruction was a day or two previous to the time that the notices were made out, that date being March 7th, 1922. This testimony, when examined critically, is positive to the effect that the notice was delivered to Miss Carr prior to March 12th, 1922. While it would have been a simple matter to ask this witness the direct question as to when the notice was served, thereby preventing argument, we think that the testimony as given was such, if believed by the jury, as to have enabled them to say definitely that the notice was served before the expiration of sixty days from January 12th, 1922.

The second contention made by the appellee is that the appellant, being an officer of the building association which loaned the money to Miss Carr to be expended in the construction of her building, and knowing all of the conditions under which the fund was placed in bank, and how it was to be withdrawn, and standing by and allowing same to be withdrawn and paid to the contractor, Guest, without the contractor paying for the material entering into the construction, it would be inequitable to allow the appellant to obtain a mechanic's lien; that he would have been, by reason of such inaction on his part, estopped from obtaining a mechanic's lien, and that being true, he was not injured by the alleged negligence of the appellee. The appellee in support of this contention has cited three decisions of this Court: *Goldman v. Brinton,* 90 Md. 259; *Willison v. Douglas,* 66 Md. 99; *Pinning v. Skinner,* 71 Md. 347. Upon an examination of these authorities it will be found

that they do not support the contention of the appellee. In each of those cases this Court was construing section 3, article 63, Code of Pub. Gen. Laws of Maryland, which reads: "No person having such lien shall be considered as waiving the same by granting a credit or receiving notes or other securities, unless the same be received as payments or the lien be expressly waived, but the sole effect thereof shall be to prevent the institution of any proceedings to enforce said lien until the expiration of the time agreed upon."

In *Willison v. Douglas, supra,* Willison, the plaintiff, together with the contractor, agreed with the owner, the defendant, to erect the building in conformity with the specifications for the sum of $1,493, and at the same time executed a bond, together with one Brady, by the conditions of which they were to save the owner, Douglas, harmless from any and all liability for work and labor done upon or materials furnished for said building beyond the sum of $1,493. Douglas, the owner, agreed to pay $500 on delivery of the lumber, and another sum of $500 on completion of the outside building, and to execute a mortgage in favor of Willison for $493, bearing interest at five per cent. per annum and payable in two years. The $1,000 in cash was paid by Douglas in accordance with the terms of the agreement, and it was admitted by Willison that he agreed to receive from Douglas a mortgage as security for the balance, amounting to $493. Douglas afterward offered to execute a mortgage, and Willison refused to accept it, on the ground that Douglas only had an equitable title to the property. Douglas then offered to pay the sum intended to be secured by the mortgage, in cash, which offer was also rejected by Willison. Under these conditions the court properly held that there was a direct waiver of the plaintiff's right to a lien, for the reason that the defendant had agreed to pay in cash the full amount of the contract price, and the plaintiff had given a bond conditioned that there would be no lien for labor and materials going into the construction of the house over and above the contract price.

In *Pinning v. Skipper,* 71 Md. 347, the facts were that Pinning Brothers entered into a written contract with

Skipper to furnish materials and labor in the erection for him of certain houses. By the contract they agreed to give Skipper a no-lien bond as a bar against liens upon said houses or either of them for work done or materials furnished or for labor or hire. At the time they gave to Skipper their bond with a surety, to which a copy of said contract was attached, conditioned for the faithful performance on their part of the terms and conditions of the contract; and it was there held that the stipulation to give a bond as a bar against liens upon said houses or either of them, and the giving of a bond conditioned for the faithful performance of that part of the contract, constituted in law a waiver of lien for said work and materials. In the case of *Goldman v. Brinton,* 90 Md. 259, the facts were that the holder of a mechanic's lien on unfinished houses induced persons to loan money to complete the same by promising to waive the priority of his lien, but subsequently refused to sign such waiver, and it was held that the holder of the lien was estopped to set up his lien against those making the advance.

It is only necessary to state the facts in the three cases relied upon to demonstrate that the decisions in those cases can have no controlling influence upon the present case. The appellant here, by no affirmative word or act, did anything which could be construed to be a waiver of his right to obtain a mechanic's lien, but it is argued that by failure to do something which in good conscience he should have done, he is estopped; or in other words, that by his inaction rather than his affirmative act he should be estopped from obtaining a lien. We cannot consent to give this force and effect to the appellant's conduct as disclosed by the record. He was an officer of the building association, but it was not his duty, nor did he have the authority, to sign the checks withdrawing the fund in question from bank, or prevent the withdrawal therefrom when a check was presented signed by Miss Carr and counter-signed by Welsh, the chairman of the building committee. Even if we admit for the purpose of argument that he had access to such books and accounts of the building association as would afford him knowledge of

the condition of the Carr-Guest account, yet he could not stop the withdrawal, or even know that a payment was about to be made until after it had been actually made, unless this information was given him by Miss Carr or some member of the building committee, and there is no evidence in the record of any such information. It is therefore our opinion that the record does not disclose any acts or evidence of failure to act on the part of the appellant which would constitute a waiver or estop him from laying and enforcing a mechanic's lien. And it is evident that this must also have been the opinion of the appellee, for although having doubts on this question at first, after investigation he advised that it could be successfully maintained, made out the notices of intention to lay the lien and, according to his testimony, actually prepared the necessary papers, had them signed and sworn to by the appellant, and mailed them to the clerk of the Circuit Court for Baltimore County for record.

The remaining questions to be decided are upon the rulings of the lower court on evidence, and are contained in the first nine exceptions. The first exception was abandoned by the appellant in his argument and brief.

The second exception is to the refusal to permit the following question, propounded to the witness Carroll E. Caltrider: "Did you see them use the material there in the erection of that house?" This question was immaterial, because it was not incumbent upon the appellant to prove that the material was actually used in the house. *Brick Co. v. Dunkerly*, 85 Md. 199; *Md. Brick Co. v. Spilman*, 76 Md. 337.

The third, fourth and fifth exceptions were to the action of the court in sustaining objections to questions propounded to the appellee on cross-examination in respect to his knowledge of the practice and custom in the administration of the clerk's office, as to what is done when papers are received for record. These questions were as follows:

"Q. Have you ever recorded any papers in the Circuit Court for Baltimore County for which the clerk did not send you a ticket? Q. In any papers sent by you to the clerk of the Circuit Court for Baltimore County for recording, did

you send the recording charges with the papers? Q. In any other papers you recorded in the Circuit Court for Baltimore County, you received a bill for recording the following month, didn't you?" We are of the opinion that these questions should have been permitted, for the reason that the witness had testified that previously he had, as attorney, filed other papers in the Circuit Court for Baltimore County, and therefore he had knowledge of the practice and custom of that office upon receipt of such a paper as this. If in the present case he sent the mechanic's lien in question to be recorded, and the usual practice of the office in sending a ticket upon its receipt, and a bill for the recording the succeeding month, was not followed in this case, the omission might have been regarded by the jury as sufficient to call his attention to the possibility of his letter not having reached the clerk's office, and to call for further inquiry as to its receipt in order to relieve himself of the charge of negligence. The appellee knew that this lien had to be recorded within a definite limited period to become effective, and not having gotten an acknowledgment of its receipt by the clerk of the Circuit Court for Baltimore County, the jury might have concluded that he should have followed up his initial letter by ascertaining definitely whether or not it had been received, in sufficient time to have prevented loss by his letter going astray.

The sixth, seventh, eighth and ninth exceptions were to the court's refusal to permit the chief clerk in the office of the clerk of the Circuit Court for Baltimore County to testify as to the practice in that office upon receipt of papers for record, and the method of making charges and sending bills for costs of recording. The reasons given in disposing of the third, fourth and fifth exceptions are alike applicable to the sixth, seventh, eighth and ninth exceptions, and we think the questions should have been permitted, although the probative value of the evidence thus presented is not great.

In the discussion of the evidence, we do not express any opinion upon the weight of the testimony, as this is for the jury, but do determine that there was error in the ruling of

the lower court in granting the defendant's prayer that there is no legally sufficient evidence from which the jury may find for the plaintiff.

From what we have said, it will be seen, the judgment must be reversed.

> *Judgment reversed, and new trial awarded, with costs·to appellant.*