CENTRAL CAB COMPANY, INC. *v.* CLARKE

[No. 66, September Term, 1970.]

*Decided November 13, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Victor L. Crawford*, with whom were *Crawford & Goldberg* on the brief, for appellant.

*William A. Ehrmantraut*, with whom were *Donahue, Ehrmantraut & Gleason* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal presents three principal questions: (1) did an attorney-client relationship exist between the appellee, William H. Clarke, a member of the bar of Maryland (Clarke) and Central Cab Company, Inc., the appellant (Central), the insured under a policy issued by Bankers and Telephone Employees Insurance Company (Bankers); (2) did the evidence show a breach of that relationship and (3) did the breach proximately cause damage to Central.

Margaret P. Doyle was injured on December 3, 1965, while she was riding in a cab owned and operated by Central. She filed an action in the Circuit Court for Montgomery County against Central to recover $35,000 damages resulting to her from the alleged negligence of Yuan Yuan Chuh, the operator of Central's cab. Service of process in this action was made upon Lewis Levy, President of Central, on January 10, 1967, whereupon Mr. Levy mailed the papers to John Roane, Inc., the adjuster for Bankers. The insurance contract between Central and Bankers provided for the defense by Bankers of any legal action instituted against Central.

Clarke, the appellee, on January 26, 1967, wrote to Bernard D. Lipton, as follows:

"Re: Margaret P. Doyle v. Central Cab Co., Inc. Law No. 20,669.

"Dear Mr. Lipton:

"The file in the above matter has been sent to us for defense.

"We are, at this time, corresponding with the company about this matter, and we request that you not take any Default Judgments until we have heard from the company. We hesitate to file our appearance in this matter until we have the full understanding of our duties with the insurance company involved.

"Please advise us that you will show us the courtesy as requested above."

Counsel for the plaintiff Doyle replied to this letter on January 30, 1967:

"Re: Margaret P. Doyle v. Central Cab Company, Inc., Law No. 20,669.

"Reference is made to your letter dated January 26, 1967. You request that this office does not take a default judgment until you have heard from the company. Please be advised that you may take whatever time you feel is necessary in this matter."

On March 14, 1967, not having heard from Clarke in regard to the case, Lipton wrote Clarke in regard to the Doyle case, as follows:

"RE: Margaret P. Doyle v. Central Cab Co., Inc. Law No. 20,669.

"Dear Mr. Clarke:

"On January 26, 1967 you sent me a letter requesting I delay any action in the case until you have ascertained from the carrier whether you should proceed to defend this case. I responded to you on January 30, 1967 agreeing to your request.

"I do not want to rush you but I would like some information from you as soon as may be practicable, as to whether or not you will be handling this case and, if so, how I should set my file."

Clarke had decided not to defend Central in the Doyle case and returned the file directly to Bankers on March 20, 1967, with an accompanying letter, as follows:

"Gentlemen:

"Under date of January 23, 1967, John Roane Company sent us the file and suit papers in the above matter.

"I immediately reviewed the file and then put in a telephone call to your Mr. Donald V. Joy and then I later confirmed that telephone call with our letter of January 26, 1967. I enclose herewith a photostatic copy of that letter for your records. In short I requested a retainer fee of $150.00 to handle this case.

"I then again called your company, not having heard from you and talked with Mr. Shearer and I wrote him a letter under date of March 2, 1967, and I enclose a photostatic copy of that letter.

"I have secured an extension of time from plaintiff's counsel in this matter so that there would be no default. Inasmuch as you have not met the terms of our employment, I am returning the file to you together with a copy of a letter I am writing to plaintiff's counsel explaining what has happened."

The letter to which Lipton referred in the aforegoing letter to Bankers was also dated March 20 and is, as follows:

"Dear Mr. Lipton:

"I wrote you under date of January 26 on the above matter, and asked that you not take a default judgment because we were corresponding with the company. I wrote the company the same day and I followed it up with a telephone call and a further letter and I find that the company has not complied with the terms of our employment. Accordingly, I am sending the papers back

to the Bankers and Telephone Employees Insurance Company, Gettysburg, Pennsylvania and we will not be representing them.

"Briefly we requested a retainer fee for accepting this case and the company has not seen fit to give us this fee. In the meantime the company has not answered our letters and we are unable to contact them by telephone and we have heard from a rather reliable source that they are in the hands of receivership.

"I would like to suggest that you give the company some additional time so that they can choose new counsel. In the case you want to correspond with the company direct, I have listed above the policy number, the claim number and the date of accident."

A copy of the letter of March 20 to Bankers was sent to John Roane, Inc., the adjuster, and a copy was sent by error to Takoma-Langley Taxi Company instead of to Central. The president of Takoma-Langley Cab Company returned the copy to Clarke, whereupon Clarke threw the copy in the wastebasket.

On April 10, 1967, Mr. Lipton wrote Bankers, as follows:

"Gentlemen:

"I am the attorney for the plaintiff Margaret Doyle in the above cited case. Service was effectuated upon the Central Cab Company and I received a request from William H. Clarke, Esq. of Galiher, Stewart & Clarke for an extension of time until that firm could ascertain whether they were going to represent the defendant. I have since heard from Mr. Clarke indicating that his firm would not represent the defendant. Mr. Clarke also requested that I give your company some additional time to choose new counsel. This letter is to so advise you. For your information

the policy number is SAC 61799 and it is claim number 5B-40343.

"Unless I hear from new counsel on or before April 25, 1967 I will presume your company has no intentions to proceed in this claim."

Bankers had been placed in receivership by the Court of Common Pleas of Dauphin County, Pennsylvania on March 30, 1967, the Insurance Commissioner of Pennsylvania having been appointed as Statutory Liquidator.

Not having heard from Bankers and no appearance having been entered for Central or any pleadings filed, the plaintiff Doyle on May 3, 1967, filed a Motion for Judgment by Default which was granted by the Circuit Court on May 16; the lower court then passed an order setting the case for an inquisition before a jury to inquire of the damages and costs. Central did not learn of this until August of 1967 when it received a notification from the Assignment Officer of the Circuit Court that an inquisition for damages was scheduled. On August 31, Central filed a motion to set aside the judgment by default; but at the hearing on this motion on September 22, Central's motion was denied.

On May 15, 1968, a stipulation between the plaintiff Doyle and the defendant Central was filed in which, *inter alia,* it was stipulated that the Circuit Court should enter judgment in favor of the plaintiff against the defendant in the amount of $4,500.00 with costs of suit and interest from the date of judgment. Such judgment was entered by the Circuit Court on May 21 and was satisfied on October 8, 1968.

Thereafter depositions were taken, one of which was that of the driver of the Central Cab, Yuan Yuan Chuh, to which we will refer more fully later in this opinion.

The third party action of *Central v. Clarke* came on for hearing on January 9, 1970, before Judge Miller. In addition to the facts stated above Central called as a witness Roger W. Titus, a member of the Maryland Bar who prior to his admission to the Bar had been an adjuster for All-

state Insurance Co. Mr. Titus was also Chairman of the Committee on Legal Ethics of the Montgomery County Bar Association. He had handled between 10 to 20 cases for defendants insured by Allstate. In answer to a hypothetical question substantially incorporating the facts in the present case, Mr. Titus expressed the opinion that at the time the insurance company sends counsel the file in the case, "an attorney-client relationship is established, unless I reject the file and send it back." He further stated that where counsel communicates with the attorney for the plaintiff and requests him not to take a default judgment because counsel is checking into the matter, the attorney-client relationship with the insured exists; and it was his opinion that there was a duty upon counsel to notify the insured of his withdrawal especially where he retained the file and *did not* return it to the insurance company for two months.

The trial court, at the end of all the testimony in the case, granted Clarke's motion for a directed verdict. The lower court, for the purposes of the motion, assumed that Clarke was retained and that there was an attorney-client relationship between Clarke and Central; but the lower court was of the opinion that there was no evidence of a breach of Clarke's professional duty, Central not having established "what the standard of care is generally in this locality" or in what manner Clarke "breached that standard of care." The lower court did not find it necessary, in view of its opinion in regard to the ground on which it ruled in Clarke's favor, to pass upon the question of whether Central had a meritorious defense in the Doyle action. Judgment for Clarke for costs against Central was duly entered on January 15, 1970; and Central filed a timely appeal to this Court from that judgment.

(1)

On appeal, Clarke, the appellee, earnestly argued that the lower court's assumption that an attorney-client relationship existed between Clarke and Central was in error and contended that no such relationship existed so

that the judgment for Clarke for costs should be affirmed for this reason. We do not agree with this contention.

Bankers, as the liability insurer, undertook to obtain counsel for the insured to defend the Doyle action. Counsel when so employed represents the insured as well as the insurance carrier and the attorney-client relationship is thus established between the insured and the attorney selected for the insured by the insurance company. This attorney-client relationship continued when Clarke retained the file and requested the plaintiff's attorney's forebearance in taking a default judgment while he deliberated as to whether he would proceed further with the case. This attorney-client relationship was subject, of course, to later termination by Clarke if satisfactory arrangements, financial or otherwise, could not be made but only upon notice of such termination to his client, Central. Clarke, in effect, recognized the obligation to give notice of the termination of the attorney-client relationship by attempting to send to Central a copy of his letter of March 20, 1967, to Bankers. Because the copy of the letter was misdirected, it was not received by Central; and when the misdirected letter was returned to Clarke, he threw it into the wastebasket instead of redirecting it properly to Central. The obligation to notify Central of the termination of employment by Clarke was of particular importance in view of the prior correspondence with Lipton, as counsel for the plaintiff Doyle, his indulgence in regard to the entry of an appearance in the case and the filing of appropriate pleadings. Indeed, in the letter of March 20 from Clarke to Lipton, Clarke stated: "I would like to suggest that you give the company some additional time so that they can choose *new counsel.*" (Emphasis supplied.)

Although an agreement upon the amount of a retainer and its payment is rather conclusive evidence of the establishment of the attorney-client relationship, the absence of such an agreement or payment does not indicate conclusively that no such relationship exists. Indeed, the payment of fees is not a necessary element in the rela-

tionship of attorney and client. The services of an attorney to the client may be rendered gratuitously but the relationship of attorney and client nonetheless exists. *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson,* 381 F. 2d 261, 127 U. S. App. D.C. 93, 18 A.L.R.3d 974 (1967), *cert. denied,* 390 U. S. 946, 88 S. Ct. 1033, 19 L.Ed.2d 1135. See 7 C.J.S. "Attorney and Client," § 65 b, page 849.

As aptly stated by Justice Frank of the Supreme Court of New York, Special Term, in *American Employers Ins. Co. v. Goble Aircraft Specialties,* 205 Misc. 1066, 1075, 131 N.Y.S.2d 393, 401 (1954):

> ". . . [T]here are not two standards, one applying to counsel privately retained by a client, and the other to counsel paid by an insurance carrier."

See *Fidelity and Casualty Co. of New York v. McConnaughy,* 228 Md. 1, 179 A. 2d 117 (1962).

It seems clear to us that Clarke had a duty to notify Central when he finally decided some two months after originally receiving the Central file from Bankers that he would not go forward with the representation.

It is well established that when an attorney terminates the attorney-client relationship he is obligated to give proper notice of such termination to the client. *Atilus v. U. S.,* 406 F. 2d 694 (5 Cir. 1969); *Zitomer v. Holdsworth,* 200 F. Supp. 490 (ED. Pa. 1961); *Isser v. Berg,* 38 Misc. 2d 957, 239 N.Y.S.2d 370 (1963); *Mambrino v. State,* 30 Misc. 2d 990, 221 N.Y.S.2d 643 (1961); *Grittano v. Flannery,* 21 Misc. 2d 91, 197 N.Y.S.2d 239 (1959); *Gosnell v. Hilliard,* 205 N. C. 297, 171 S. E. 52 (1933); *MacDermid v. MacDermid,* 116 Vt. 237, 73 A. 2d 315 (1950); *In re Estate of Coffin,* 189 Iowa 862, 179 N. W. 123 (1920). See 7 C.J.S. "Attorney and Client," § 110, page 944.

We conclude that the attorney-client relationship existed between Clarke and Central as the trial court assumed for the purposes of the decision below.

(2)

Clarke contended below successfully and before us that Central did not offer sufficient expert testimony in the case to establish the standard of care in this case and hence has not proved a breach of any obligation owed by Clarke to Central. We do not agree with this contention and we are of the opinion that this error requires a reversal of the judgment.

There may well be cases where expert testimony is required in regard to whether the conduct of the attorney violates the standard of reasonable care or diligence in the particular situation. In our opinion, however, the present case is not one of those situations in which expert testimony is required. The failure of Clarke to notify Central of the termination of his employment thereby preventing Central from obtaining other counsel to appear and plead for it and thus avoiding a judgment by default against Central is such a clear violation of Clarke's duty as an attorney that the trial court should have ruled this as a matter of law. The situation in the instant case is analogous to cases involving medical malpractice in which a dentist pulled the wrong tooth, and our predecessors held in affirming a judgment for the plaintiff that there was no necessity for expert testimony to establish that a dentist should not pull the wrong tooth. *McClees v. Cohen,* 158 Md. 60, 148 A. 124 (1930). The same rule applies in cases in which physicians have done an obviously negligent act such as accidentally amputating the wrong arm, or negligently leaving a sponge in a patient's body. *Rural Educational Ass'n v. Bush,* 42 Tenn. App. 34, 298 S.W.2d 761 (1956) and *Fredrickson v. Maw,* 119 Utah 385, 227 P. 2d 772 (1951).

In *Butts v. Watts,* 290 S.W.2d 777, 779 (Ky. 1956), it was stated: "There is a limitation on the rule that expert testimony is essential to support a cause of action for malpractice where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts."

See also *Johns Hopkins Hospital v. Genda,* 255 Md. 616, 258 A. 2d 595 (1969) holding that expert testimony was necessary in that medical malpractice case involving a complicated operative technique in regard to heart surgery, but contrasting that case with medical malpractice cases of carelessly dropping a scalpel or knife on a patient causing him to be cut or dropping acid carelessly on the patient causing him to be burned.

Because we have found expert testimony not to be required by the facts in this case and that the lower court should have found as a matter of law that there was a breach of duty by Clarke, we do not find it necessary to decide the question raised by Clarke as to whether the expert testimony in itself was sufficient to establish the breach of duty.

Clarke urges that the decision of our predecessors in *Cochrane v. Little,* 71 Md. 323, 18 A. 698 (1889), a malpractice action against an attorney in which it was held that there was no error in the admission into evidence of testimony of lawyers that the advice given by the attorney to the client was under the circumstances of the case, in their opinion, not such as a prudent careful lawyer, of ordinary capacity and intelligence would have given, or ought to have given, indicates that such expert testimony is *required* in *all* cases involving the negligent conduct of attorneys. In our opinion, the *Cochrane* case is not authority for such a proposition, but only holds that the admission of such evidence under the facts and circumstances of that case was not error. In *Cochrane,* the advice given the client by the attorney was in regard to a bond given in connection with a certain equity proceeding which advice wrongly stated the effect of giving a release to the only solvent principal obligor in the bond which release in fact caused all claims for reimbursement for the money paid by the surety to be relinquished. It is strongly indicated in the opinion in *Cochrane* that allegations in the declaration "would certainly be subject to the charge imputed to it of being founded in the want of ordinary skill or the want of reasonable care and dili-

gence on the part of the defendant." (71 Md. at 333, 18 A. at 701.) We perceive no inconsistency between the holding in the *Cochrane* case and our opinion in the present case.

(3)

In order for a client to recover damages against an attorney for negligent conduct of an attorney for failure to appear and defend a case, the client must show that injury proximately resulted to the client from this negligent act. The client must show that he had a meritorious defense to the plaintiff's action against him as otherwise the failure of the attorney to appear and defend would result in no prejudice or damage to the client. The negligent failure would be *damnum absque injuria*. *Kendall v. Rogers*, 181 Md. 606, 31 A. 2d 312 (1943) states the rule requiring proximately caused damages; however, in *Kendall* such damages did exist. For cases where no damages were allowed in spite of the attorney's negligence, see *Pete v. Henderson*, 124 Cal.App.2d 487, 269 P. 2d 78 (1954); *Lawson v. Sigfrid*, 83 Colo. 116, 262 P. 1018 (1927) and *Kilmer v. Carter*, 78 Cal. Rptr. 800 (1969). The trial court did not find it necessary to pass upon this element of recovery inasmuch as it found, erroneously in our opinion, that the failure to produce adequate expert testimony to establish the want of care prevented recovery by Central against Clarke in any event.

The attorney for the Plaintiff Doyle testified that in his opinion the $4,500.00 settlement "was a fair and reasonable settlement so far as the defendant was concerned." He thought the settlement was "generous" so far as the defendant was concerned. On the other hand, a reading of the deposition of Yuan Yuan Chuh, the driver of Central's cab, rather indicates that the sudden stop of the cab allegedly causing the Plaintiff Doyle to be thrown off the seat and be injured was unavoidable; and the Plaintiff Doyle had stated:

> " 'Don't worry, it's not your fault' * * * she said to me, 'Don't worry about it,' its not my

fault, and she was very generous and gave me a big tip."

We shall remand the case to the lower court for further proceedings in order that the issue of whether or not Central had a meritorious defense may be determined.

*Judgment reversed and case remanded for further proceedings in accordance with this opinion, the costs to abide the result in the Circuit Court for Montgomery County.*