DOROTHY V. FISHOW *v.* GARY
HOWARD SIMPSON

[No. 1348, September Term, 1982.]

*Decided July 8, 1983.*

The cause was argued before GILBERT, C.J., and MASON and
GETTY, JJ.

*Jeffrey Lee Greenspan,* with whom were *Gary Steven Mandel* and *Greenspan & Mandel, P.C.* on the brief, for appellant.

*Joseph F. Cunningham,* with whom were *Robin A. Rosenbluth* and *Haggerty, Donohue & Cunningham* on the brief, for appellee.

GETTY, J., delivered the opinion of the Court.

The appellant herein, Dorothy V. Fishow, being twice aggrieved by adverse decisions in litigation initiated by her, appeals to us to reverse the second call. For the reasons hereinafter set forth, we shall affirm.

In *Fishow v. Perry,* Law No. 44790 in the Circuit Court for Montgomery County, Mrs. Fishow asserted claims of wrongful commitment and medical malpractice against Dr. Morris Perry, her physician. Gary Edward Simpson, the appellee herein, represented Mrs. Fishow in a four day jury trial that was concluded on September 29, 1977, by a verdict for the defendant, Perry. No appeal was taken from that judgment.

After a lapse of nearly three years, Mrs. Fishow determined that her unsuccessful attempt to recover from Dr. Perry was not due to a less than meritorious claim, but was solely attributable to the failure of the appellee to present her case properly. On September 24, 1980, therefore, she filed a legal malpractice action against her former counsel, Simpson.

The declaration charges Simpson with breach of contract in the first count and with negligence in count two. Depositions were submitted by Mrs. Fishow, Robert Fishow, her husband, and by the appellee, Simpson. Both parties responded to requests for production of documents and, thereafter, Simpson filed a Motion for Summary Judgment. A hearing was held on Simpson's motion on July 12, 1982. All of the judges of the Circuit Court for Montgomery County recused themselves and the case was assigned to a judge from another county. The reasons for the recusal are not

disclosed in the record. At the conclusion of the hearing, the court requested Mrs. Fishow to submit a supplemental memorandum directed to case law on legal malpractice as a contract action; relevant case law to support the contention that expert testimony is not required to establish the standard of care under the facts of this case and identification of the expert witnesses and the acts or omissions the experts would have testified constituted medical malpractice by Dr. Perry. Mrs. Fishow filed the supplemental memorandum on July 15, 1982.

On August 3rd the court granted the appellee's motion in a one paragraph order "for the reasons set forth in (Mr. Simpson's) memorandum of points and authorities filed ... on May 21, 1982, and July 19, 1982.". The memoranda referred to consists of twenty-one pages and the trial court's shotgun approach has left the appellant in a quandary as to what the court actually decided as to the five issues presented. One could conclude that the alacritous disposition answered everything, or that no definitive result has been reached as to any of the issues. Preferably, the trial court should answer each issue as concisely as possible, thus avoiding the confusion that flows from the generalization employed in this case. The reasons stated in support of any ruling, furthermore, should be those of the court, not counsel's.

The appellant's issues are:

A. Whether a remedy for breach of contract is available in a case alleging failure to perform adequately on the part of an attorney in a situation arising out of an attorney/client relationship?

B. Whether or not expert testimony is necessary regarding the standard of care of an attorney in a lawsuit for breach of contract against that attorney?

C. Whether or not expert testimony is necessary regarding the standard of care in a lawsuit for

negligence against an attorney in a case where the allegations, if proved at trial, could be construed as a clear and obvious violation of the attorney's duty?

D.  Whether or not expert testimony is necessary regarding the standard of care of an attorney in a lawsuit for negligence against an attorney where the trial is a bench trial and the trial court can take judicial notice of the standard of care for an attorney in Maryland?

E.  Whether or not there were disputed issues of material fact sufficient to preclude the granting of summary judgment and to require a trial on the merits?

## THE FACTS

On or about May 31, 1973, Dorothy V. Fishow visited Dr. Morris Perry, a licensed physician, at his office in Wheaton, Maryland. Dr. Perry, who had treated Mrs. Fishow's husband, Robert, for some time previously, diagnosed Mrs. Fishow as being "depressed" and prescribed the drug Elavil for her. Mrs. Fishow was not seen again by Dr. Morris Perry between May 31, 1973 and June 22, 1973. On June 21, 1973, Mrs. Fishow went to Holy Cross Hospital in Silver Spring, Maryland, seeking advice concerning an adverse reaction she was experiencing.

On June 22, 1973, Dr. Perry signed and issued a statement on a Physician's Certificate of the Department of Mental Hygiene of the State of Maryland that Mrs. Fishow was not eating, not sleeping, and would be a threat to herself if she were not involuntarily committed. Dr. Perry further certified that he had personally examined Mrs. Fishow on June 17, 1973, when in fact he had not. Dr. Perry also stated in the certificate that Mrs. Fishow was not under medication, when in fact he knew that Mrs. Fishow was taking Elavil, having prescribed it himself.

As a result of the execution of these certificates, Mrs. Fishow was arrested by Sheriff's Deputies or Police Officers of Montgomery County, Maryland, and was held in custody from June 22, 1973 until July 11, 1973, at Springfield State Hospital in Sykesville, Maryland, against her will.

On May 22, 1976, Mrs. Fishow, having retained Gary Howard Simpson, Esquire, as her attorney, filed suit against Dr. Perry in the Circuit Court for Montgomery County, Maryland, Law No. 44790. Mrs. Fishow's Declaration alleged that Dr. Perry's actions resulted in her false and illegal imprisonment; that Dr. Perry had filed a false certificate in that he had not personally examined Mrs. Fishow on June 17, 1973 and that he had certified that Mrs. Fishow was not on any medication when she was in fact taking Elavil; that Dr. Perry had failed to adequately follow up his prescribing of Elavil for Mrs. Fishow on or about May 31, 1973; that Dr. Perry had abandoned his care of Mrs. Fishow by failing to see her personally between May 31, 1973 and June 22, 1973; that Dr. Perry should not have prescribed Elavil because there was a high risk of this drug precipitating a manic episode in a potentially manic-depressive person; that Dr. Perry did not avail himself of a consultation with a psychiatrist; that Dr. Perry failed to inform Mrs. Fishow of the harmful side effects of Elavil; and that Dr. Perry's actions in their entirety constituted negligence and medical malpractice.

In her legal malpractice action, Mrs. Fishow alleged seven specific evidentiary issues that she contends establish a breach of contract and/or negligence committed by Simpson. On appeal, she abandons four of her seven contentions and, therefore, those four are not before us. The remaining complaints are:

1.  Simpson failed to elicit testimony that Fishow's condition prior to commitment was physical and resulted from a combination of food and drugs rather than psychological factors.
2.  Simpson did not establish that Dr. Perry should not have prescribed the drug "Elavil".

3. Simpson did not produce evidence to establish that Dr. Perry's falsifying a certificate constituted medical malpractice.

## ISSUE NO. 1

The appellant couches this issue of a breach of contract remedy being available in a legal malpractice action upon the premise that counsel "failed to act adequately". This is clearly not the test upon which *Caltrider v. Weant,* 147 Md. 338 (1925), relied upon by the appellant, is based. In *Caltrider* counsel was expressly employed for the purpose of obtaining a mechanic's lien which he failed to do. In *Fishow v. Perry,* Simpson was employed to pursue a claim for medical malpractice against Dr. Perry, which he did.

The record is devoid of any showing that Simpson was instructed to adopt any particular theory in presenting Fishow's claim. To contend after the fact that a different strategy should have been employed is resorting to the infallibility of hindsight. It is not, however, a basis for an action for breach of contract. If Fishow's contention is correct, Simpson would be liable to her even if she had been successful in her action against Dr. Perry, for the reason that he did not present the case in a manner depicting her as having physical rather than psychiatric problems.

*Watson v. Calvert Bldg. & Loan Assn.,* 91 Md. 25 (1900), also cited by the appellant in support of a contract theory of legal malpractice, is apposite to *Caltrider.* In *Watson* counsel was employed for the specific purpose of searching a title which subsequently proved to be defective. The court in *Watson* said:

> "This responsibility of the attorney, although ordinarily enforced by an action of case for negligence in the discharge of his professional duties, in reality rests upon his employment by the client and is contractural in nature."

We do not construe this quotation to stand for the proposition that legal malpractice is a breach of contract in every case. If counsel, in Watson, had not searched the title he would have breached the contract employing him for that purpose. Certifying a defective title, however, is a negligent performance of the contract between the parties.

We agree that legal malpractice may give rise to an action for breach of contract in cases involving employment of an attorney to perform a specific service in accordance with clearly state instructions from the client-employer. The present case, however, does not fall within that class of cases, and the court below properly so ruled.

## ISSUE NO. 2 & 3

The appellant insists that in a breach of contract action negligence is not an issue and expert testimony is not required, citing *Gilbert v. Williams,* 8 Mass. 51 (1811). Be that as it may, we have heretofore determined that the instant case is not one in contract. *Caltrider,* supra, dispels any doubt as to the necessity for expert testimony by setting forth the standard required of attorneys.

> "The law implies a promise on the part of attorneys that they will execute the business entrusted to their professional management with a reasonable degree of care, skill and dispatch." *Caltrider,* p. 340.

The same standard is set forth in *Calvert,* supra.

*Central Cab Co. v. Clarke,* 259 Md. 542 (1970), enunciates the distinction between cases requiring or not requiring expert testimony. In *Central Cab,* the court held that the failure of counsel to notify his client of his termination of employment was such a clear violation of his duty as an attorney that the trial court should have so ruled as a matter of law. *Clarke's* conduct was analogized by the court as being the equivalent of a dentist extracting the wrong tooth or a physician amputating the wrong limb. The limitation on the requirement for expert testimony, therefore, is in that class

of cases where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts. *Butts v. Wates,* 290 S.W. 2d 777 (Ky. 1956), cited in *Central Cab,* supra. Mrs. Fishow had no expert and this case was not one where the alleged incompetence or negligence of counsel was within the knowledge or experience of laymen.

## ISSUE NO. 4

The appellant pursues another route on the issue of expert testimony by suggesting that in a court trial the judge can take judicial notice of the standard of care required of attorneys. No Maryland authority is cited by the appellant in support of this theory and, we hold that no such rule exists. The Louisiana case cited by the appellant,[1] involves a blatant failure by an attorney to investigate a claim by a hospital that it had a lien on the client's proceeds from a personal insurance policy. That case is analogous to *Central Cab,* supra, but is inapposite to the present case.

In *Bonhiver v. Rotenberg, Shwartzman Richards,* 461 F. 2d 925 (7th Cir. 1972), the court concluded that a determination of the standard of reasonable care by the trial judge based upon his own private investigation, or upon his own intuitive knowledge of the court, untested by cross examination, or any of the rules of evidence, constitutes a denial of due process in a criminal or civil matter.

We hold that, based upon the facts of this case, expert testimony was required and the trial court's ruling was correct.

---

1. *Muse v. St. Paul Fire and Marine Insurance Company,* 328 So. 2d 698 (La. 1976).

*ISSUE NO. 5*

Appellant contends that four allegations of material facts exist in this action that preclude the entry of summary judgment. We shall address each allegation in the order raised. The issues are namely:

1. Whether Mr. Simpson failed to adequately investigate, ascertain, and present to the court in the case of *Fishow v. Perry* medical evidence surrounding the interaction of the drug Elavil, food and alcohol, specifically the effect that this interaction would have on a patient's blood pressure.

2. Whether or not Mr. Simpson failed to present to the court in the case of *Fishow v. Perry* medical evidence that the drug Elavil should not have been prescribed for Mrs. Fishow at all, in that such a drug might precipitate a manic episode in a potentially manic-depressive individual.

3. Whether or not Mr. Simpson failed to present to the court in the case of *Fishow v. Perry* medical evidence that the signing of a certificate of commitment under the circumstances presented in that case constituted medical malpractice in and of itself.

4. Whether or not Mr. Simpson's failure to present evidence that Mrs. Fishow's medical condition was a physical condition caused by an adverse reaction, rather than a psychiatric or mental condition, constituted negligence.

*No. 1.* The record discloses that Simpson contacted and discussed this case with the following individuals or consulting groups: Dr. Joel Cohen; Dr. Stanley Bialek; Dr. Peter Roemer; Dr. Sheila Gray; Dr. Harold Hirsh, The National Advisory Service; Medical-Legal Consultants' and The Technical Advisory Service for Attorneys. Dr. Cohen, a practicing psychiatrist and appellant's treating physician after her release from Springfield State Hospital, testified as an

expert witness in *Fishow v. Perry.* The substance of his testimony was that Dr. Perry erred in failing to follow up Fishow's reaction to the drug Elavil which he described as a potent tricyclic antidepressant. The reason for monitoring patients using Elavil, according to Dr. Cohen, is the possibility that the drug may produce a manic depressive illness in which case the drug is discontinued and replaced with a major tranquilizer.

Dr. Cohen also advised Simpson that whether a person has a manic depressive illness, or whether the use of Elavil produces a manic depressive episode, is a question that cannot be answered by the present state of medical literature. The other four medical experts contacted by Simpson did not believe that Dr. Perry's treatment constituted medical malpractice. Two of the three advisory services did not believe that malpractice existed. Medical Legal Consultants opined that malpractice existed based upon Dr. Perry's failure to follow up his patient and his signing of the commitment certificate when he had not seen the patient within seven days in accordance with Sec. 10-616 of the Health Article. Contrary to appellant's statement that Medical Legal Consultants would have testified that Elavil should not have been prescribed, their report stated that additional information was required before that issue could be answered.

Simpson did not introduce the report. He did, however, present evidence of the failure of Dr. Perry to examine the appellant prior to signing the commitment. Fishow alleges that this was not enough, because signing the commitment without having seen the patient was malpractice *per se.* No authority was stated in support of this claim and an affidavit from Dr. William Stage, offered at the Summary Judgment hearing, that the signing of the commitment was malpractice does not raise any material issue of fact. Mrs. Fishow was committed upon a petition signed by her husband. The failure of Dr. Perry to see her within seven days of signing the certificate may be a violation of the statute on involuntary commitments, but that signing did not produce her manic depressive episode. The alleged violation relating to

the commitment, however, was brought to the attention of the jury.

*No. 2.* Mrs. Fishow alleges that Simpson should have produced evidence that Elavil should not have been prescribed. Dr. Cohen, Fishow's physician indicated that he would have prescribed Elavil and that the error by Dr. Perry was his failure to monitor her progress. Despite his research and investigation with medical experts, Simpson could not obtain medical testimony to raise this issue. If he had discovered such a witness, the testimony would have contradicted his principal witness, Dr. Cohen. Counsel's trial tactics are not a basis for a malpractice action. *Frank v. Bloom,* 634 F2d 1245 (10th Cir. 1980).

At the hearing on July 12, 1982, counsel for the appellant advised the court that medical evidence to support the allegation that Elavil should not have been prescribed would be provided by affidavit from Dr. Bialek. The court requested a supplemental memorandum from the appellant listing the names of experts and affidavits relating to their testimony regarding malpractice. The memorandum submitted named Dr. Stage and his affidavit related only to the commitment. The appellant, therefore, presented no material facts relating to the alleged improper prescribing of Elavil.

*No. 3.* The signing of the commitment by Dr. Perry has been covered in No. 2 above. No further recitation need be repeated.

*No. 4.* The causation of appellant's condition cannot be established according to her physician, Dr. Cohen. He testified that her manic depressive illness was precipitated by the use of Elavil. The appellant has offered no evidence or contrary medical opinion as to causation. Her allegations, therefore, are not disputed material facts, but are properly classified as bald, unsupported assertions of fact.

This case is a classic example of Monday morning quarterbacking. Judge Smith recognized the plight of the loser in *Woody v. Mudd,* 258 md. 234 (1970), stating:

> "Even inexperienced trial counsel know that there must be a losing side in all litigation. It does not necessarily follow that the loser is ready to accept the final adjudication as evidence that he or she should not have prevailed in the litigation. Since most human beings have a tendency to see the shortcomings of others rather than their own shortcomings, it becomes easy for a litigant to place the blame for the loss of litigation on the incompetency of counsel, rather than the weakness of his own case."

The appellant herein overlooks the holding in *Maryland Casualty Co. v. Price,* 231 F. 397 (4th Cir. 1916), cited in *Woody,* supra:

> "In a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client."

Unless a party has a good cause of action against the party proposed to be sued, the first party loses nothing by the conduct of his attorney even though the latter were guilty of gross negligence. *Niosi v. Aiello,* 69 A. 2d 57 (Mun. Ct. App. D.C. 1949). A second guess, sought by the appellant, is no guarantee of a different result. Like many unsuccessful litigants, Mrs. Fishow is not prepared to adopt the philosophical view, *Woody,* supra, that this is just another of the injustices of justice.

We conclude that the record does not disclose any disputed issues of material fact and the judgment entered by the trial court is affirmed.

*Affirmed.*
*Costs assessed to appellant.*