JAMES F. HEYWARD *vs.* JOHN B. SANNER.

*Libel and Slander—Judgment by Default—Inquisition of Damages—*
*Evidence—Privileged Communication.*

Where in an action of slander a judgment by default was obtained
against the defendant, such judgment conclusively establishes the
right of the plaintiff to recover some amount to be determined by
an inquisition of damages, and consequently that the defendant was
chargeable with at least legal malice in speaking the words.   And
upon the inquisition of damages the defendant is not entitled to an
instruction that the words set out in the declaration were spoken
under such circumstances as to make them a privileged communica-
tion, because in that event the defendant would not be liable at all.

In such case, the defendant is entitled to show upon the inquisition
that the words were spoken without express malice so as to relieve
him from the imposition of punitive damages.

Appeal from the Superior Court of Baltimore City (Dob-
ler, J.)   The plaintiff having failed to elect a trial by jury,
the Court, upon the inquisition, assessed the damages at
$125.

The cause was argued before McSherry, C. J., Bryan,
Briscoe, Page, Roberts and Boyd, JJ.

*Geo. Dobbin Penniman* (with whom was *E. J. D. Cross* on
the brief), for the appellant.

*Jacob J. H. Mitnick*, for the appellee.

Page, J., delivered the opinion of the Court.

The plaintiff below was a conductor on one of the cars
of the City and Suburban Railway Company in the city of
Baltimore.   It was his duty, when fares were collected, to
register them by a device called an "indicator," and to
account each day for the number shown by the register.
It is alleged in the *narr.* that after having been wrongfully
discharged from the service of that company, he became a

conductor on the cars of the Lake Roland Elevated Railway Company, which also operated a line of street cars in the same city; that whilst so employed, the defendant falsely and maliciously, with intent to injure the plaintiff, spoke and published in the presence of the superintendent of the Lake Roland Company, and of other persons, "the false and defamatory words following, namely, ' Put Sanner (meaning the plaintiff), off the road (meaning·that the said superintendent should discharge the plaintiff from the employ of the said Lake Roland Elevated Company), he (meaning the plaintiff), had twenty-five on the indicator and thirty-six in the car (meaning thereby that the plaintiff as conductor, &c., had collected thirty-six fares, &c., and noted only twenty-five fares on the indicator, and that the plaintiff had wrongfully embezzled the other eleven fares and intended to defraud the said City and Suburban Railway Company out of the same);" by reason whereof the plaintiff was discharged from the service of the company, and was otherwise greatly injured.

The appellant having failed to plead, the appellee obtained a judgment by default. Later on an inquisition of damages was taken before the Judge at Large. The defendant appeared by counsel, and evidence on both sides was taken. Among other things there was testimony to the effect that at the time the words were spoken, a Mr. Fredericks was the general manager of the Lake Roland Company. That the road of that company had been purchased by the City and Suburban Company, and until the merger of the two roads was completed, he was remaining in control of the former road, and under the arrangement was, "in a general way, subject to the orders" of the appellant, who was the general manager of the City and Suburban Road. That the plaintiff was discharged by him, by reason of the words set out in the declaration, which were spoken to him "over the telephone," in the ordinary course of business.

At the close of the testimony, the defendant prayed the Court to rule " that in considering the question of the con-

versation between Mr. Heyward and Mr. Fredericks, as officials of the same railway system, that it was proper for Heyward in telling Fredericks to discharge Sanner, to give to Fredericks the reason which led him, Heyward, to direct Sanner's discharge, and that said statements were privileged." The Court having refused so to rule, the defendant excepted, and the propriety of this action of the Court is the only question we are called on to determine.

That a judgment by default fixes the liability of the defendant and establishes the right of the plaintiff to recover some amount to be afterwards determined by an inquisition of damages cannot now be questioned. This Court has said in the case of *Green* v. *Hamilton*, 16 Md. 329, that a judgment by default " if regularly entered is as binding as any other, as far as respects the power and jurisdiction of the Court, in declaring that the plaintiff is entitled to recover, though the amount of the recovery in some cases remains to be ascertained by a jury." Like every other judgment, it is conclusive of every fact necessary to uphold it. *Freeman on Judgments*, sec. 330, and authorities there cited. *Cooper* v. *Roche*, 36 Md. 565 ; *Davidson* v. *Myers*, 24 Md. 555.

The words set out in the *narr.* when taken in connection with the circumstances under which they were spoken, as set forth in the *colloquia* and innuendoes, amounted to an imputation of the crime of embezzlement, and are therefore actionable in themselves. *Garrett* v. *Dickerson*, 19 Md. 447. The utterance of them therefore in the presence of other persons, without other attendant circumstances, carried with them the implication of legal malice. *Long* v. *Eakle*, 4 Md. 458. But the malice thus implied is only that which is the essential element in an action for slander or libel, and is " not malice in the ordinary sense of hatred or ill-will against the person of whom the defamatory words are spoken." *Negley* v. *Farrow*, 60 Md. 177. In that case the article published was held to be libellous *per se*, and its publication having been established, the only ques-

tion was the amount of damages. "In estimating these," the Court says, "they (the jury), were to consider whether it was published maliciously and wantonly, for the purpose of injuring the character and reputation of the plaintiff, or as editors of a newspaper honestly commenting upon the official acts and conduct of the plaintiff and in the belief of its truth."

It would seem to follow from this statement of the law, that upon the inquisition it was proper for the defendant to prove if he could that the words were spoken without express malice, that is, without the purpose of injuring the character and reputation of the plaintiff. Such proof, if satisfactory to the jury, would be effective to relieve the defendant from the imposition of punitive or vindictive damages. But if in thus repelling the idea of express malice, there should be testimony from which, if there were no judgment, the jury could find the communication to be privileged, yet the defendant could not be entitled to a ruling declaring it to be privileged, because by the judgment the question of legal malice has been definitely settled against him. To rule under these circumstances the words were privileged, is equivalent to an instruction that there is no legal malice, although the judgment by default conclusively settles that there is. This is the necessary result, because the legal effect of declaring the words to be privileged is to repel the presumption of malice of any kind arising from their utterance. *McBee* v. *Fulton*, 47 Md. 427. In other words, to so rule would be to declare the defendant was justified in speaking the words, and if he was there could be no recovery at all, since malice express or implied is a necessary ingredient in an action of slander. *Dicken* v. *Shepherd*, 22 Md. 418. This could not be done in this case, because, as we have said, the legal malice is conclusively settled by the judgment.

The Court below committed no error in rejecting the prayer.

*Judgment affirmed.*

(Decided June 22nd, 1897).