**ROYAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**MILES & STOCKBRIDGE, P.C., et al., Defendants.**

**Civil Action No. S–99–1351.**

United States District Court, D. Maryland, Northern Division.

April 27, 2001.

Mitchell A. Stearn, Porter Wright Morris & Arthur, LLP, Virginia Elizabeth Richards, Law Office, Washington, DC, for plaintiff.

William J. Murphy, Murphy & Shaffer, Baltimore, MD, Robert T. Shaffer, III, Murphy & Shaffer, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This matter is before the Court on Third–Party Defendant Parler & Wobber's Motion for Reconsideration of this Court's March 13, 2001 Memorandum Opinion and Order, in which this Court denied Parler & Wobber's motion for summary judgment on the issue of contribution and held that Parler & Wobber's settlement recommendation to Salomon was negligent as a matter of law.

There is no procedural or substantive impediment to the present motion for reconsideration, as it calls to the Court's attention an error in its original handling of the issue. For the reasons that follow, it will be granted.

## BACKGROUND

■ In its motion for reconsideration, Parler submits that the Court's decision

that Parler was negligent as a matter of law in recommending that Salomon, Inc. ("Salomon") settle the *Jerome* litigation for $1.6 million was premature, as Miles & Stockbridge ("Miles") had not moved for summary judgment against Parler at the time the Court concluded that Parler was negligent as a matter of law. Thus, Parler argues that, although the Court was procedurally correct in denying Parler's motion for summary judgment based on its argument that it was *not* negligent as a matter of law in recommending settlement for $1.6 million, the Court should not have ruled, *sua sponte*, that Parler *was* negligent as a matter of law before that particular issue was affirmatively before the Court and briefed by the parties. Parler specifically claims that the evidence submitted in its summary judgment motion supported the issues and arguments framed by Parler as the moving party. As the non-moving party *opposing* a summary judgment motion, however, Parler says it would have given the Court the opportunity to consider additional evidence revealing the existence of factual dispute as to whether its settlement recommendation was negligent. Parler has a strong argument that it should be permitted to introduce defensive evidence to defeat summary judgment in favor of Miles[1]; however, because the Court overlooked a key argument that Parler initially presented in a footnote to its summary judgment motion and reply memorandum, the Court will reconsider its March 13, 2001 Order, confessing thereby its own error. Thus, this Court has now done its bit to add to the megaplex of errors already committed by virtually everyone who had come close to this nettlesome mess.

In its summary judgment memorandum, Parler argued that the settlement recommendation to Salomon was less than both the highest potential verdict, as opined by Miles's expert F. Ford Loker, and the average verdict for a mesothelioma case in Baltimore City. Parler further claimed that its settlement recommendation for less than the highest potential verdict was within the standard of care, because Salomon preferred paying an amount certain in settlement to proceeding to trial and risking a judgment higher than the settlement amount. In other words, according to Parler, the settlement decision was a question of risk tolerance. Parler also emphasized that Miles's settlement expert did not take subjective factors into account in his opinion as to the reasonable settlement value of the *Jerome* matter. Specifically, Parler maintained that an important factor in its calculation of a settlement recommendation to Salomon was the possibility of a punitive damages award. Because Salmon allegedly expressed great concern about the ramifications of a punitive damages award, particularly negative publicity

---

**1.** Although district courts have inherent power to enter summary judgment *sua sponte,* that power is contingent on providing the losing party with notice that it must come forward with evidence to defend its claim. *See U.S. Dev. Corp. v. Peoples Federal Sav. & Loan,* 873 F.2d 731, 735 (4th Cir.1989) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). This notice must provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact, and "in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." *Id.* Parler came forward with additional evidence in its motion for reconsideration that established a genuine issue of material fact as to whether Salomon's concerns about publicity and disclosure of financial information based on a punitive damages award influenced Parler's settlement advice. Thus, because this Court entered summary judgment against Parler without notice, the Court would be obligated to consider the additional evidence presented by it on reconsideration.

and the effect a damages award would have on various corporate mergers, and because Parler felt that it could not rule out a punitive damages award based on existing precedent on the issue, Parler allegedly considered Salomon's desire to avoid a punitive damages award when it provided settlement advice.

Miles, on the other hand, maintained that Parler breached the standard of care by recommending that Salomon settle for $1.6 million. Miles alleged that Parler was inexperienced in handling asbestos claims and that Parler failed to take into account the likelihood of a successful appeal when advising Salomon on settlement. Furthermore, Miles alleged that Parler failed to recognize that the *Jerome* action was a survival action only, as opposed to a customary survival and wrongful death action. The omission of a wrongful death claim in the *Jerome* action, according to Miles, would have resulted in a significant reduction in the plaintiff's damages award. On the issue of punitive damages, Miles cited to testimony of Ellen O'Brien, Salomon's claims representative, that undermined Parler's claim that Salomon settled because of concern about a possible punitive damages award. Miles then argued that, even if Salomon expressed concern about the implications of a punitive damages award, Parler was nonetheless negligent in factoring punitive damages into its settlement recommendation, because punitive damages would have been unavailable under controlling authority. Finally, Miles maintained that even if Salomon had legitimate reasons to settle for an unreasonable amount, Royal, not Salomon, made the settlement decision.

The Court, in its memorandum opinion and order, held that the evidence to which

Parler cited in the record did not support its claim that Salomon's concern about negative publicity and financial viability justified Parler's settlement advice. Finding insufficient evidence that subjective factors influenced the settlement recommendation, the Court held that Parler was negligent as a matter of law in recommending that Salomon settle for $1.6 million, because Salomon could successfully have appealed the default judgment, asserted the defense of limitations, and paid nothing in damages.[2] In so holding, however, the Court overlooked a point made by Parler in a footnote to its summary judgment memorandum and in a footnote to its reply memorandum. In these footnotes, Parler stated that the likelihood of success on appeal had a negligible impact on the calculation of the settlement amount, because two of Miles's *own* experts, F. Ford Loker and Paul Bekman, testified that it would not have been a breach of the standard of care for an attorney in the *Jerome* litigation to advise that the chance of success on appeal was less than 50%. *See* Parler's Memorandum in Support of its Motion for Summary Judgment, at p. 19, n. 9 and Parler's Reply Memorandum, at p. 8, n. 6. Because of the unique role of experts in legal malpractice cases, these concessions by Miles's experts in deposition are fatal to Miles's claim for contribution against Parler.

### ANALYSIS

 As stated in the Court's memorandum opinion, a trial judge decides the issue of proximate cause as a matter of law in attorney malpractice cases where the determination of proximate cause depends on whether an appeal of the underlying action would have been successful. Mem.

---

**2.** Because evidence that Salomon desired settlement because of subjective factors was lacking, the Court declined to reach the issue whether punitive damages would have been available had the case proceeded to trial.

Op. at 27. Thus, the Court appropriately determined that a Maryland appellate court would have reversed Judge Angeletti's decision to enter a default judgment against Salomon.[3] A trial judge does not, however, determine the standard of care in a legal malpractice case, even though it is an area in which a court arguably has unique expertise. *See Fishow v. Simpson,* 55 Md.App. 312, 319, 462 A.2d 540 (1983). In *Fishow,* the Maryland Court of Special Appeals rejected a legal malpractice plaintiff's argument that a trial judge can take judicial notice of the standard of care required of attorneys in specific situations. *Id.* at 319, 462 A.2d 540. The plaintiff cited to *Central Cab. Co. v. Clarke,* 259 Md. 542, 270 A.2d 662 (1970), to support her argument that expert testimony is not required in all legal or medical malpractice cases. In *Central Cab. Co.,* the Court of Appeals held that expert testimony was not necessary to establish a breach of the standard of care where the attorney failed to notify his client that he would no longer represent him, thereby preventing the client from obtaining new counsel and avoiding a default judgment. *Id.* at 551, 270 A.2d 662. The Court acknowledged that expert testimony may be required in certain malpractice cases, but concluded that the attorney's conduct in the case before it was "such a clear violation of the [defendant's] duty as an attorney that the trial court should have ruled this as a matter of law." *Id.* The Court analogized the attorney's conduct to other conduct in malpractice actions that did not require proof of negligence by expert testimony, *to wit,* that of a dentist who pulls the wrong tooth, *see McClees v. Cohen,* 158 Md. 60, 148 A. 124 (1930), or that of a medical professional who negligently leaves a sponge in a patient after an operation, *see Rural Educ. Ass'n v. Bush,* 42 Tenn.App. 34, 298 S.W.2d 761 (1956). *Central Cab* thus eliminated the requirement for expert testimony in classes of cases "where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts." *See Fishow,* 55 Md.App. at 318–19, 462 A.2d 540; *see also Franch v. Ankney,* 341 Md. 350, 357 n. 4, 670 A.2d 951 (1996). The plaintiff's claim for malpractice in *Fishow* was not based on a specific shortcoming on the part of the attorney; rather the plaintiff claimed that the attorney should have pursued a different strategy in presenting the plain-

---

**3.** Parler states in its motion to reconsider that the Court relied, in part, on Judge Angeletti's deposition testimony to conclude that a Maryland appellate court would have reversed Judge Angeletti's decision to enter a default judgment. *See* Parler's Motion to Reconsider, at p. 4, n. 2. The Court assumes that Parler is referring to the following language in the Court's opinion:

Based on his testimony, it is clear that Judge Angeletti issued the default judgment to penalize Miles for its conduct, despite the existence of several meritorious defenses that would have absolved Salomon from liability.

Mem. Op. at p. 46. The Court is well aware that an appellate court would not have the benefit of Judge Angeletti's testimony when deciding whether to uphold or reverse the entry of the default judgment against Salo-

mon, nor would an attorney, when analyzing the likelihood of a successful appeal. The Court did not base its conclusion that a Maryland appellate court would have reversed Judge Angeletti's decision on Judge Angeletti's testimony; rather, the Court appropriately considered the fact that Salomon asserted several meritorious defenses and did not concede liability, that Jerome alleged no prejudice, and that Miles, albeit erroneously, thought the time for filing a responsive pleading was tolled. Based on these facts, a Maryland appellate court would find that Judge Angeletti issued the default judgment as a penalty for Salomon's failure to respond to the *Jerome* complaint and not in response to an admission of liability by Salomon. The Court referred to Judge Angeletti's testimony to merely bolster its conclusion based on appropriately considered facts.

tiff's claim for medical malpractice. *Id.* at 317, 462 A.2d 540. As such, the Court held that the case was not "one where that alleged incompetence or negligence of counsel was within the knowledge or experience of laymen." *Id.* at 319, 462 A.2d 540. In holding that expert testimony was required to prove malpractice against the attorney in *Fishow,* the Court cited *Bonhiver v. Rotenberg, Schwartzman Richards,* 461 F.2d 925 (7th Cir.1972), which held that a determination of the standard of care by a trial judge, based on his or her own knowledge of the court, untested by cross examination or the rules of evidence, constituted a denial of due process in a civil or criminal matter. *Fishow,* 55 Md.App. at 319, 462 A.2d 540.

Thus, applying the holding of *Fishow* to the case at hand, expert testimony is required to show that Parler violated the standard of care, because Parler's conduct in recommending settlement is not so within the common knowledge or experience of a layperson as to enable him or her to readily recognize or infer negligence therefrom. To the contrary, the settlement recommendation in this case involved an analysis of the prospect of a successful appeal—an area which is undisputably outside the purview of a layman's common knowledge.

 In malpractice cases where expert testimony is required, such as this case, summary judgment is proper when a plaintiff's expert testifies at deposition that a defendant's conduct was not a breach of the standard of care, regardless of the expert's initial conclusions concerning certain conduct. *See McCoy v. Hatmaker,* 135 Md.App. 693, 714–15, 763 A.2d 1233 (2000) (upholding summary judgment in favor of defendant when equivocal testimony of experts failed to establish that the defendant's conduct was grossly negligent); *Tatum v. Gigliotti,* 80 Md.App. 559,

569, 565 A.2d 354 (1989), *aff'd,* 321 Md. 623, 583 A.2d 1062 (1991) (affirming summary judgment for defendant in negligence action after expert "backed away" from initial finding of recklessness); *see also Mastalski v. Int'l Bus. Machines Corp.,* 974 F.2d 1331, 1992 WL 207789, at *5 (4th Cir.1992) (affirming summary judgment in favor of defendant where plaintiff relied solely on her expert's report even though the defendant severely discredited the basis of the expert's opinions during deposition).

Parler argues in its motion for reconsideration that it cannot be negligent as a matter of law, because Miles's own expert witnesses testified that Parler did not breach the standard of care in concluding that the likelihood of a successful appeal of the default judgment was less than 50%. Parler cites to the following excerpts from the deposition transcripts of F. Ford Loker and Paul Bekman to support its argument:

Q: I'm not focusing on whether it's wrong to give a percentage. My focus is would it be unreasonable or far below the standard of care for a lawyer to look at the same material you looked at and instead of reaching the conclusion that you reached that the chance of appeal are [sic] 80 percent, he reached or she reached the conclusion—the chances on appeal were less than 50 percent?

A: No. I would say no. That would not necessarily be below the standard of care.

Loker Deposition, at 232–33.

Q: So if, for instance, a lawyer concluded that there was less than a 50 percent chance of prevailing on appeal, you would—you are not prepared to opine that that conclusion would be a breach of the standard of care?

A: No, I'm not.

Bekman Deposition, at 126.

■ Addressing this testimony in its response to Parler's present motion, Miles states that its expert witnesses were not designated to opine on the specific question of whether Parler breached the standard of care in failing to recognize the likelihood of a successful appeal. Instead, Miles explains, its experts were designated to assess the prospects for appeal, and all three of its experts concluded that reversal of Judge Angeletti's decision was likely.[4] Miles then states that Mr. Melvin Sykes and Mr. Loker were designated to render an opinion as to whether Parler breached the standard of care in its representation of Salomon and whether this alleged breach caused damage to Royal. Miles further emphasizes that both Mr. Sykes and Mr. Loker indeed opined that Parler erroneously assessed the legal issues in the *Jerome* case, thus breaching the standard of care.[5] Miles also urges the Court to disregard the opinion of Mr. Duvall, Parler's expert witness, because Mr. Duvall based his opinion on an incorrect assessment of Maryland law regarding the treatment of default judgments.[6] The Court need not reach the issue whether the testimony of Parler's expert on the likelihood of a successful appeal should be stricken as unreliable[7], because the testimony of Miles's experts fails as a matter of law to establish that Parler breached the standard of care, which is its burden to prove in seeking contribution. *See*

---

**4.** Actually, Melvin Sykes, one of Miles's experts, testified that by filing summary judgment motions, instead of a motion to vacate the default judgment, Parler abandoned any right of appeal on the failure to vacate the default judgment. *See* Sykes Deposition, at p. 128.

**5.** One subject on which Miles's experts opined was Parler's alleged breach of the standard of care in failing to file appropriate motions with Judge Angeletti to seek to have the default judgment vacated. In this Court's March 13, 2001 opinion, however, it was unnecessary to reach the issue whether Parler breached the standard of care in filing motions before Judge Angeletti, because Miles could not prove that any negligence on the part of Parler in filing the motions caused damage to Royal. Accordingly, it was unnecessary to consider the testimony of Miles's experts on Parler's alleged breach of the standard of care in handling motions filed with Judge Angeletti. Thus, while Miles's experts did testify that Parler breached the standard of care in handling various motions before Judge Angeletti, their testimony did not support a viable claim for contribution against Parler.

**6.** The Court disagrees with Parler's argument in its reply memorandum that Mr. Duvall's testimony is not legally incorrect simply because the Court concluded that a Maryland appellate court would have reversed Judge Angeletti's ruling. Mr. Duvall's testimony concerning the standard of care was based on his incorrect opinion that the default would have been upheld. The situation in this case is analogous to *Franch v. Ankney*, 341 Md. 350, 670 A.2d 951 (1996), where the Maryland Court of Appeals affirmed a trial judge's decision to strike expert testimony because the expert's opinion relied on an erroneous interpretation of law. Moreover, the Court finds Parler's analogy to flipping a coin illogical. Parler equated being legally incorrect for giving advice about the chance of appeal in this case to being legally incorrect for predicting prior to a coin toss that there was a 50% chance the result would be tails because after the toss, everyone knew the result was heads. This analogy ignores the significant fact that the case law regarding default judgments was clear and available before Parler provided the incorrect advice, as opposed to knowing the outcome of a coin toss to a relative certainty, rather than as a mere probability. The difference is essentially the same as flipping an ordinary coin and flipping a two-headed one.

**7.** *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In his deposition, Mr. Loker, Miles's expert on settlement, agreed that the relevant components of a settlement evaluation are: chance of success at trial, the verdict range at trial, chance of success on appeal, and the cost of pursuing trial and appeal. Loker Deposition, at p. 234. The Court's decision that Parler was negligent in recommending the $1.6 million settlement amount was based on the certainty that an appeal of the default judgment would have been successful, thus allowing Salomon to obtain a dismissal of the *Jerome* action. Because Parler did not point to sufficient evidence suggesting that other factors justified the settlement, the Court ruled that no reasonable fact finder could conclude that Parler was not negligent in recommending a $1.6 million settlement for a case that would have eventually been dismissed. While Miles's experts correctly opined that an appellate court would reverse the default judgment—in effect establishing causation—both Mr. Loker and Mr. Bekman explicitly disavowed the suggestion that Parler breached the standard of care in concluding that the chances of a successful appeal were less than 50%. Thus, in concluding that the $1.6 million settlement recommendation was unreasonable, Mr. Loker could not have legitimately placed much, if any, emphasis on the chances of a successful appeal in a making a settlement evaluation. Consequently, as Parler correctly pointed out in its summary judgment motion and motion for reconsideration, the Court should have analyzed only the remaining factors when determining whether Parler was *not negligent* as a matter of law in recommending settlement for $1.6 million. A close look at the remaining factors and the record in this case compels the conclusion that Parler could not be held liable for negligence with regard to it settlement

advice by a reasonable fact finder. *Anderson, supra.*

Mr. Loker testified that in light of the default judgment, there was at least a ninety percent chance of a monetary damages award at trial in the *Jerome* litigation. Loker Deposition, at p. 231. He further testified that the likely verdict range at trial in the *Jerome* case would be as low as $200,000 and as high as $2 million, and that the cost of pursuing an appeal would be less than $100,000. Based on this testimony, and the significant fact that the likelihood of a successful appeal could not factor into the evaluation, a reasonable fact finder could not conclude that Parler was negligent when it recommended settlement for less than Mr. Loker's highest prediction for the likely verdict.

As stated by the Court of Appeals in *Thomas v. Bethea,* 351 Md. 513, 529, 718 A.2d 1187 (1998), "lawyers [should] not be regarded as negligent simply because another lawyer, or even most lawyers, with the benefit of hindsight, would not have made the recommendation at issue." Moreover, the *Thomas* court noted that lawyers must consider subjective factors when calculating settlement recommendations and that settlement recommendations themselves are subjective. *Id.* Mr. Loker likewise testified that determining settlement values and predicting potential verdict values was an art, and not a science or matter capable of mathematical calculation. Loker Deposition, at p. 228. Finally, Mr. Loker agreed with the Court of Appeals that a range for honest differences of opinion could legitimately exist in the context of settlement recommendations. *See Parler & Wobber v. Miles & Stockbridge,* 359 Md. 671, 710, 756 A.2d 526 (2000); Loker Deposition, at p. 228.

Miles, in its memorandum in opposition to Parler's motion for summary judgment, claims that "Parler did not have any significant experience in settling asbestos claims, so his advice was suspect from the outset." Miles's Opposition to Third–Party Defendant's Motion for Summary Judgment, at p. 23. Miles also states that Mr. Loker's opinion that a reasonable settlement value for the *Jerome* case was $300,000 to $400,000 was based in part on the fact that the *Jerome* case was a survival action only, and as such significantly reduced the likelihood of damages. *Id.* at p. 23–24. Most important, however, according to Miles, was the fact that "Salomon had complete defenses ordinarily unavailable to asbestos defendants .. and that Mr. Loker considered that these defenses were likely to be available, even if Salomon had to appeal the final judgment in order to assert them." *Id.* at 24. In the concluding paragraph to its section on Parler's alleged negligent settlement advice, Miles emphasizes that it "has introduced substantial evidence indicating that the facts and circumstances of *Jerome,* including in particular the complete defenses available to Salomon, counseled a settlement at a much lower range." *Id.* The concession by Mr. Loker that Parler did not breach the standard of care in opining that the chance of successful appeal was less than 50% completely undermines Miles's argument that Parler was negligent in recommending settlement, because both Miles and Mr. Loker emphasized that their assessment that the reasonable settlement value was $300,000–$400,000, well below Parler's assessment of $1.6 million, was based, in large part, on the likelihood of a successful appeal.

▆▆▆ The inability of this Court to consider a likely appeal of any damages verdict in this case (because of the unique role of expert testimony in legal malpractice cases) coupled with Mr. Loker's opinion that a potential damages verdict in the *Jerome* matter could reach as high as $2 million, compels the conclusion that Parler did not breach the standard of care in recommending settlement for $1.6 million. In reaching this conclusion, the Court emphasizes that clients and attorneys are entitled to, and are in fact encouraged to, settle cases to avoid the time consuming process of pursuing trial, and the risk that a fact finder will assess a higher verdict amount than the amount for which they settled. While Miles correctly notes in its summary judgment opposition memorandum that there is no longer a higher standard of care for challenges to lawyer's advice on settlement[8], this Court will not second guess the settlement advice of an attorney if it was within the range of possible verdicts as established by expert testimony, except in cases where an appeal would be successful and *no* other circumstances justifying settlement existed. Subjecting lawyers to malpractice claims for advising settlement for amounts lower than a possible verdict when there is no ironclad certainty of success on appeal (such as an obvious lack of jurisdiction) would undermine important goals of finality in litigation and out-of-court settlement of disputes. Furthermore, to address a repeated implication by Miles, inexperience or unfamiliarity with a certain area of law does not itself establish legal malpractice; rather, a plaintiff must show that an attorney breached the standard of care in handling the particular matter. The Court reached a different bottom-line conclusion in its March 13, 2001 opinion. It stands by its earlier legal conclusion, as a matter of the law therein stated, notwithstanding the outcome it is compelled to reach here, because it is compelled to reach the pres-

---

**8.** *See Thomas v. Bethea,* 351 Md. 513, 718 A.2d 1187 (1998).

ent result only because Miles's own experts failed to establish that Parler breached the standard of care. Thus, Parler's inexperience is irrelevant to the matter before us. More telling (and ironic) is the fact that Miles, a self-proclaimed specialist in asbestos litigation, conceded that it did breach the standard of care while representing Salomon.

Finally, the Court's conclusion is not affected by the parties' dispute on the availability of punitive damages, which Parler alleges played a major role in Salomon's desire to settle. Specifically, Parler maintains that Salomon was concerned about disclosing financial information, in the event the trial court allowed a punitive damages award, and about becoming a target of asbestos plaintiffs' attorneys in the mid-Atlantic region, if a large verdict was awarded against Salomon. Miles countered by producing credible evidence that these concerns did not factor into Salomon's decision to settle, and that a punitive damages award was a near impossibility in the *Jerome* litigation, because Philipp Brothers, Salomon's predecessor, merely brokered a sale of asbestos and was minimally culpable for the injuries suffered by the plaintiff's husband.[9] According to Miles, even if Salomon had expressed concern about a punitive damages award, Parler should have advised of the near impossibility that the trial court would allow a punitive damages award.

Maryland courts have never squarely addressed the issue whether allegations in a complaint sufficient to establish malice under the applicable punitive damages standard are deemed admitted by a default, and are therefore immune from challenge at a damages-only trial.[10] It is well established in Maryland that a court must provide a defendant in default with an opportunity to present evidence at a hearing on the *amount* of compensatory damages that are not liquidated; the *availability* of compensatory damages, however, is conclusively established by the default. See *Greer v. Inman*, 79 Md.App. 350, 356, 556 A.2d 1140 (1989) ("It is beyond cavil that the entry of a judgment by default in a claim for unliquidated damages merely established the non-defaulting party's right to recover."). The ability to contest the availability of punitive damages is not so clear. The parties have directed the Court to only one Maryland case where a defendant in default was permitted to present evidence that would disprove the plaintiff's entitlement to punitive damages. See *Heyward v. Sanner*, 86 Md. 19, 21–22, 37 A. 798 (1897). In *Heyward*, the Court of Appeals permitted a defaulting defendant in a defamation action to prove that the words at issue were spoken without express malice, thereby relieving the defendant from the imposition of punitive damages. *Id.* The Court held that the plaintiff's *narratio* (narration of the facts

9. Miles also contends that even if Salomon had legitimate concerns that justified a large settlement, Royal ultimately made the settlement decision. The ultimate decision-maker is not relevant to the Court's analysis, however, as both Royal and Salomon would have acted reasonably in accepting a settlement for less than the highest potential verdict amount, if a successful appeal of the verdict was not certain.

10. Ordinarily, the availability of punitive damages is a substantive issue and is there-

fore, according to Maryland's conflict of laws rules, governed by the law of the state in which the wrong occurred. See *Naughton v. Bankier*, 114 Md.App. 641, 691 A.2d 712 (1997). The issue before this Court, however, the availability of punitive damages *based on a default*, is procedural; therefore, Maryland law applies as it is the forum state. See generally *Billingsley v. Lincoln Nat'l Bank*, 271 Md. 683, 685 n. 1, 320 A.2d 34 (1974); *Naughton*, 114 Md.App. at 650–51, 691 A.2d 712.

on which he relied) implied the legal malice necessary to prove slander or libel, but not actual malice in the sense of hatred or ill-will toward the person who was the subject of the defamatory words. *Id.* at 21, 37 A. 798. The defendant was, thus, permitted to contest the imposition of a punitive damages award by disproving the existence of express malice. *Id.* at 22, 37 A. 798. Arguably, this case is distinguishable because the allegations in Jerome's complaint were sufficient to prove malice that would support an award of punitive damages.[11] Nevertheless, the issue of the availability of punitive damages based on a default does not affect the Court's analysis or conclusion, because Mr. Loker's opinion as to the likely verdict range of $200,000 to $2 million did not factor in a punitive damages award. *See* Loker Deposition, at 23–26, 252–53 (opining that the order of default would not have resulted in punitive damages). Therefore, as Parler's settlement recommendation was $400,000 less than the conceded highest likely compensatory damages verdict, any error in Parler's punitive damages analysis was inconsequential.

### EFFECT OF THE GENERAL RELEASE

In its summary judgment opposition memorandum against Parler, Miles argues that Parler negligently presented Salomon's defense based on the general release, and that Parler's negligence caused Royal to pay an excessive amount in settlement. Miles explains that, upon discovering the general release, Parler should have filed a motion to vacate based on newly discovered evidence that it could not have discovered sooner with ordinary diligence. Instead, Miles alleges that Parler filed a summary judgment motion based on the release, without requesting the court to first vacate the default. Mile's expert, Mr. Melvin Sykes, concluded that Parler breached the standard of care in presenting the general release to the court. He also testified that the motion as filed by Parler provided no leverage in the settlement process "because it was self-defeating." Miles also argues that Parler breached the standard of care in recommending that Salomon settle before resolution of the pending motion based on the general release.

■ Accepting for the purpose of argument that Parler was negligent in filing the motion for summary judgment based on the general release, Miles's argument nonetheless fails, because Miles cannot prove that the outcome of the settlement negotiations would have been any different had Parler filed a motion to vacate instead of a motion for summary judgment; thus, Miles cannot prove causation.

■ In *Thomas v. Bethea*, 351 Md. 513, 532, 718 A.2d 1187 (1998), the Maryland Court of Appeals discussed extensively the measure and proof of damages in legal malpractice cases for negligent settlement. The Court contrasted the measure of damages in cases where the plaintiff claims the attorney recommended an unreasonable settlement amount, with the measure of damages in cases where the plaintiff claims the attorney recommended acceptance of an inadequate settlement of-

---

11. The *Jerome* Complaint alleged that the illness of the plaintiff's husband was caused by the "actual malice, omission, conscious indifference or utter disregard for the welfare of [him] on the part of [Salomon] ... in that they ignored scientific data made known and available to them ... which clearly indicated that asbestos fiber was hazardous to health, and prompted by pecuniary motives, [Salomon] willfully and wantonly ignored and failed to act upon said medical and scientific data ..." *See Jerome* Complaint, at p. 4–5, ¶ 11.

fer instead of pursuing the litigation to trial. *Id.* at 532–33, 718 A.2d 1187. In the former situation, the measure of damages is the difference between the actual settlement and a reasonable settlement. *Id.* at 531, 718 A.2d 1187. In the latter situation, the measure of damages is ordinarily decided by what is known as a trial within a trial, that is, the malpractice jury decides what the plaintiff would have received in the underlying litigation had the attorney recommended rejection of the inadequate settlement offer and pursued trial. *Id.* at 533, 718 A.2d 1187. In order to obtain the difference between the actual settlement and a reasonable settlement, a plaintiff must produce evidence that: (1) the settlement recommended by the lawyer was one that a lawyer exercising reasonable skill, judgment, and diligence would not have recommended under the circumstances; (2) had the settlement offer not been accepted, the plaintiff in the underlying case would have settled for substantially less,[12] and (3) that lesser amount would have been a reasonable settlement, one that a lawyer exercising reasonable skill, judgment, and diligence would have recommended. *Id.* at 532, 718 A.2d 1187. The *Thomas* Court emphasized the difficulty in producing evidence that the underlying case would have settled for a different amount. *Id.* The Court explained that the settling adversary in the underlying case is not likely to admit that it would have offered a substantially different amount than was actually offered, and that other evidence regarding settlement value or the prospect of a better settlement is often regarded as speculative. *Id.* (citing *Fuschetti v. Bierman,* 128 N.J.Super. 290, 319 A.2d 781(Law Div.1998); *Merzlak v. Purcell,* 252 Mont. 527, 830 P.2d 1278 (1991)). While extraneous evidence of settlement

value could be relevant to the issue of liability, that is, to prove that the recommended settlement was not one that a lawyer exercising reasonable skill, judgment, and diligence would have recommended, the Court stated that extraneous evidence "cannot reasonably serve to establish the measure of damages absent a showing that the case would likely have been settled for a [different] amount." *Id.* Because of the evidentiary difficulties associated with a plaintiff's claim that a settlement was unreasonable, plaintiffs commonly assert that their lawyers should have rejected settlement altogether and pursued the litigation to adjudication. *Id.* at 533, 718 A.2d 1187.

In the case at hand, both of Miles's arguments regarding Parler's handling of the general release and its effect on the settlement negotiations fail. Had Parler rejected Jerome's settlement offer and awaited the outcome of the summary judgment motion based on the general release, Salomon would have been in a worse bargaining position, because the evidence shows that Judge Angeletti probably would not have granted *any* motion based on the general release. *See* Angeletti Deposition, at pp. 32, 101–104, 108. Judge Angeletti specified in his deposition testimony that he knew the default was an interlocutory order subject to modification, that he did not anticipate that a new ground would have persuaded him to change his mind, and that he entered the default because of Miles's failure to comply with the court's deadline. Furthermore, he stated that he did not know how he would have treated the general release. This testimony, coupled with the more express testimony discussed above, necessitates the conclusion that neither the motion for summary judgment filed

---

**12.** The discussion in *Thomas* involved an unreasonably low settlement recommendation. *Id.* at 532, 718 A.2d 1187. The principles

evaluated by the Court of Appeals, however, apply equally to an unreasonably high settlement recommendation.

by Parler, nor a properly argued motion to vacate, would have been successful, despite the newly discovered general release. Even if Judge Angeletti's testimony concerning the general release leaves room for argument that he *might* have vacated the default, that mere possibility is insufficient to prove that Parler's conduct caused harm to Salomon/Royal. Thus, as there is insufficient evidence to show that Salomon/Royal would have enjoyed a more favorable bargaining position had Parler advised them to await a ruling on the motion for summary judgment, Miles's argument that Parler should have advised Salomon/Royal to await settlement until resolution of the motion fails.

Miles also argues that Parler's alleged negligence weakened Salomon/Royal's leveraging power, resulting in an unreasonable settlement. As discussed above, assuming Parler was negligent in filing the summary judgment motion based on the release, Miles still must prove causation and damages. To prove causation and damages, Miles must prove that Jerome would have accepted a lower settlement amount had Parler filed a stronger motion based on the release. While the expert testimony offered by Miles would presumably be enough, if accepted by a trier of fact, to prove that Parler breached the standard of care in filing the motion based

on the release, Miles has not presented any evidence to the Court, namely testimony of Mr. Amato or Jerome herself,[13] that Jerome would have sought less than $2 million had a different motion been filed. Consequently, as Miles cannot establish that Parler's conduct caused harm to Salomon/Royal in the negotiation process, its claim based on Parler's handling of the general release fails.

## CONCLUSION

For the reasons stated, all relevant evidence being before the Court in the parties' cross-motions and there being no triable factual issue, Parler & Wobber's Motion for Reconsideration is hereby GRANTED. The Court will, by separate order, enter summary judgment in favor of Parler & Wobber against Miles & Stockbridge and Mauricio E. Barreiro on the third-party complaint, and deny Miles & Stockbridge's Motions for Summary Judgment against Royal and Parler & Wobber.

The Court will also, by separate order, enter judgment in favor of Royal against Miles & Stockbridge and Mauricio E. Barreiro. The Court will award Royal $1,655,-916 [14] in compensatory damages, with prejudgment interest.

 Under Maryland law, prejudgment interest is awarded as a matter of

---

13. Any expert testimony offered to prove that Jerome/Mr. Amato would have decreased the amount proposed for settlement had Parler filed a proper motion to vacate would be too speculative as a matter of law to establish causation. *See Thomas,* 351 Md. at 532, 718 A.2d 1187.

14. Damages include: the settlement amount of $1.6 million; legal fees paid to Parler & Wobber in defense of the *Jerome* action, in the amount of $47,875; legal fees paid by Royal after Mr. Barreiro negligently removed the *Jerome* action to federal court on February 5, 1998, in the amount of $7,381; and $660 in

sanctions assessed against Salomon by Judge Blake as a result of the improper removal of the *Jerome* action. In its Opposition to Royal's Motion for Summary Judgment, Miles maintained that Royal's right to recover legal fees would be reduced by the amount Royal would have spent to obtain a judgment in its favor and sustain the judgment on appeal. Miles's relies on the RESTATEMENT (SECOND) OF CONTRACTS § 347(c) to support its argument. This reliance is misplaced, however, as Royal's summary judgment motion was based on a tort claim of legal malpractice. Furthermore, this Court previously rejected Miles's argument that Royal failed to mitigate its

right under written contracts to pay money on a date certain or in conversion cases where the value of the chattel converted is readily ascertainable. *See Buxton v. Buxton,* 363 Md. 634, ——, 770 A.2d 152, 164 (2001). On the other hand, prejudgment interest is disallowed "in tort cases where recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement." *Id.* There is an exception to the general rule of non-recovery in tort actions for conversion cases because the value of chattel converted is readily ascertainable. *See Robert C. Herd & Co. v. Krawill Mach. Corp.,* 256 F.2d 946, 952 (4th Cir.1958), *aff'd,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). In allowing prejudgment interest, the *Herd* Court reasoned that, "where valuation is reasonably estimable, as for the loss of a chattel, the injury is ordinarily not redressed by allowing only the value of the chattel in disregard of loss of the use of money thereby occasioned." *Id.* This case is analogous to a conversion case in that the amount of damages was readily ascertainable and liquidated before the Court entered judgment. The *amount* of damages suffered by Royal was never at issue in this case; rather, Miles contested only its liability for the damages suffered by Royal. Thus, the Court will award Royal prejudgment interest.

Finally, the Court had concluded in the exercise of its discretion, that all parties will bear their own costs of this suit.

damages; thus, Miles is liable for all foreseeable damages resulting from its negligence. These damages include legal fees incurred by Royal in its continued defense of the claims against Salomon after Miles's negligence prevented dismissal of the *Jerome* claim. As

Miles, in its opposition, contested only the issue of mitigation of damages and prejudgment interest, any opposition to the amount of damages claimed by Royal has been waived, and there is no factual issue in dispute relating to the calculation of damages.