**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 07-1009**

_____

CHRISTOPHER U. HALL,

        Plaintiff - Appellant,

    v.

ROGER J. SULLIVAN; MARK DEVAN; COVAHEY, BOOZER, DEVAN & DORE, LLC; DIPAULA & SULLIVAN, LLC,

        Defendants - Appellees,

    v.

SODEXHO, INCORPORATED,

        Movant - Appellee.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:04-cv-02846-WDQ)

_____

Argued: January 31, 2008        Decided: April 8, 2008

_____

Before WILKINSON and TRAXLER, Circuit Judges, and Liam O'GRADY, United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Michael P. Coyle, Columbia, Maryland, for Appellant. Stephan Young Brennan, ILIFF & MEREDITH, P.C., Pasadena, Maryland, for Appellees. **ON BRIEF:** Kathleen Howard Meredith, ILIFF & MEREDITH, P.C., Pasadena, Maryland, for Appellees.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Christopher Hall sued Roger J. Sullivan, Esq., Mark Devan, Esq., DiPaula & Sullivan, LLC, and Covahey, Boozer, Devan & Dore, LLC, for legal malpractice. The district court granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment. The district court held that under Maryland law Hall had not met the burden of proving that defendants breached the standard of care in structuring the franchise investment transaction, that the termination agreement concerning other franchises did not release Hall's rights under the remaining franchise agreement, and that Hall failed to prove that he suffered a loss proximately caused by defendants. The district court also held that the attorneys properly billed Hall for their efforts to enforce the franchise rights and that Sullivan's alleged negligence in making settlement demands to Smoothie King® did not cause Hall's losses. Finding no error, we affirm the judgment of the district court.

I.

Christopher Hall, a seasoned businessman who previously owned GNC® franchises, sought to invest in Smoothie King® franchises in 1998. Hall consulted with the law firm of Kilpatrick Stockton LLP in connection with a venture capital investment in, and consulting service arrangement with, the acquisition of three separate

3

Smoothie King® franchises; one in North Carolina, one in Boston, and one in South Carolina.  Hall received a retainer letter from Kilpatrick Stockton LLP on June 19, 1998, which detailed the documents necessary to complete Hall's desired franchise investment transactions.

Instead of retaining Kilpatrick Stockton LLP, Hall faxed the retainer letter from Kilpatrick Stockton LLP, containing Hall's handwritten annotations from his conversations with them, along with a handwritten note to Sullivan on June 23, 1998.  Hall instructed Sullivan to expeditiously prepare the documents delineated in the Kilpatrick Stockton LLP retainer letter.  Hall emphasized that the transaction was to be structured so that Hall would provide financial backing and consulting services to the three franchises, yet Hall's liability would be limited, his investment would be protected, and Hall would not have to pay state taxes.

Hall further told Sullivan to create three corporations for the Smoothie King® franchises and to prepare warrant certificates to each franchise, which Hall would hold.  The warrant certificates, upon presentation, would allow Hall to purchase a majority interest in each corporation on demand, thereby permitting Hall to step in and take control of the franchise.  The structure of this transaction, as envisioned by Hall, protected his interest in the Smoothie King® franchise, yet shielded him from liability.

4

Sullivan, who previously represented Hall in connection with other legal matters, agreed to represent Hall in this matter. Accordingly, Sullivan prepared the franchise investment transaction documents specified by Hall for the three franchises. With regard to the South Carolina franchise, Hall provided financing to Ryan Beck, so that Beck could open and manage the South Carolina franchise. Sullivan created a corporation called Rybeck, Inc. to hold the franchise assets and prepared a warrant agreement signed by Ryan Beck on behalf of Rybeck, Inc. The warrant agreement allowed Hall to become the majority shareholder of Rybeck, Inc. on demand, giving him the authority to exercise control of the South Carolina franchise at his option. Sullivan also reviewed and prepared other documents for the South Carolina franchise[1].

The structure of Hall's proposed transaction required advance approval by Smoothie King®, because the franchise investment structure violated certain terms of the Smoothie King® Franchise Agreement and Smoothie King® Area Development Agreement. Accordingly, Sullivan drafted a letter agreement on July 10, 1998, to Smoothie King® which detailed the structure of Hall's franchise

---

[1]Sullivan prepared the Smoothie King® Area Development Agreement, the Smoothie King® Franchise Agreement naming Ryan Beck as franchisee, a pledge and security agreement between Hall, Ryan Beck, and Rybeck, Inc., a revolving credit master note for Rybeck, Inc., a revolving credit loan agreement for Rybeck, Inc., a consulting agreement, and a guarantee agreement signed by Ryan Beck.

investment transaction[2]. Approval was received on October 8, 1998. Pursuant to the South Carolina Smoothie King® Area Development Agreement, Ryan Beck and Rybeck, Inc., which were treated interchangeably by Smoothie King® and Hall, were to have three Smoothie King® stores in operation by November 1, 1999. Ryan Beck and Rybeck, Inc. opened one store in South Carolina in early 1999.

Beck also opened a Smoothie King® cart at the University of South Carolina campus but ceased the operation soon thereafter because of operational problems. Beck attempted to open a Smoothie King® store at the University of South Carolina in March 1999, but the University declined to enter into a contract. As a result of the failed business venture with the University of South Carolina, Hall believed that he had causes of action against Smoothie King® for breach of contract and tortious interference of contract[3].

By May 11, 2000, Beck and Rybeck's only store was in default for failure to pay operating and advertising fees to Smoothie King®, and Beck and Rybeck were in default under the Area

---

[2]Hall would provide financial backing to Ryan Beck for the South Carolina franchise, and to two other individuals for the North Carolina and Boston franchises, and Hall maintained the right to step in and take control of each franchise at any time. The letter agreement also set forth each section of the Smoothie King® Franchise Agreement and Smoothie King® Area Development Agreement that this transaction could potentially violate, and sought Smoothie King®'s approval.

[3]Hall believed that Smoothie King® attempted to negotiate a contract with the University of South Carolina to cut him out of the deal and place him in default under the Area Development Agreement for failure to open the requisite number of franchises.

Development Agreement for failure to open the requisite number of Smoothie King® stores. As a result of Beck and Rybeck's defaults, in March of 2002 Sullivan obtained a confessed judgment on behalf of Hall against RyBeck, Inc. in the amount of $348,730.23 plus attorney's fees in the amount of $52,309.53, and a confessed judgment against Ryan Beck in the amount of $431,411.23, plus attorney's fees in the amount of $64,711.18. Sullivan was able to obtain these judgments in favor of Hall because of the documents Sullivan had earlier prepared to protect Hall's interest in the South Carolina franchise. On April 3, 2002, Hall exercised the warrant certificates and became the majority shareholder of Rybeck, Inc. On September 6, 2002, Hall and Beck signed an agreement that transferred all of Ryan Beck's rights under the Smoothie King® Franchise Agreement to Hall.

Hall also encountered difficulties with the Boston and North Carolina franchises, and Smoothie King® stores in those locations never opened. Sullivan negotiated a Termination Agreement between Smoothie King®, Hall, and the two franchisees in those locations, which was entered into on June 15, 2001. The terms of that Agreement released Hall and the franchisees from their obligations under the Smoothie King® Franchise Agreements and Smoothie King® Area Development Agreements, and Hall received a full return of his investment in the Boston and North Carolina franchises from Smoothie King® in the amount of $65,000.00.

7

Ryan Beck eventually abandoned the South Carolina franchise, moved to Florida for personal reasons, and became an operations manager at Smoothie King® Corporate. As a result of Hall and Ryan Beck's deteriorated relationship, Ryan Beck's move to Florida, and the failure of the University of South Carolina business venture, Hall accused Smoothie King® of breach of contract and tortious interference of contract. Smoothie King® responded by letter that the Termination Agreement had released all claims against it for the Boston, North Carolina, and South Carolina franchises, and that Hall's claim for tortious interference lacked merit. Hall did not further pursue the claim against Smoothie King® and instead filed the instant legal malpractice action.

## II.

Hall disputes the district court's conclusion that the attorneys did not breach the appropriate standard of care under Maryland law.[4] Hall also argues that the district court erred when it ruled that the Termination Agreement did not negate Hall's ability to sue Smoothie King® or vitiate the 1998 letter agreement.

---

[4]Hall also argues that the district court improperly granted summary judgment as to the issue of Sullivan's negligence with regard to the South Carolina franchise *sua sponte*, thereby violating the notice requirement as set forth in Allstate Ins. Co. v. Fritz, 452 F.3d 316, 323 (4th Cir. 2006). This argument lacks merit, as the testimony of Hall's own expert that Sullivan did not breach the standard of care in structuring the transaction was part of the record. This focal issue was also addressed in the summary judgment briefs before the district court.

8

Further, Hall argues that if we determine the attorneys were negligent, Hall is entitled to a portion of the fees he paid to the attorneys. Lastly, Hall argues that the district court erred when it granted summary judgment in Sullivan's favor regarding intemperate letters written to Smoothie King®, which Hall argues caused Smoothie King® to decline to enter into settlement agreement with him.

## III.

In order to recover against an attorney for legal malpractice in Maryland, a plaintiff must prove "(1) the attorney's employment,(2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." Thomas v. Bethea, 718 A.2d 1187, 1195 (Md. 1998). "In order to be a proximate cause, the negligence must be [(]1) a cause in fact, and [(]2) a legally cognizable cause." Atlantic Mut. Ins. Co. v. Kenney, 591 A.2d 507, 512 (Md. 1991). In a legal malpractice case, expert testimony is required to establish the standard of care and breach thereof when the acts in question are not "within the common knowledge or experience of a layperson as to enable him or her to readily recognize or infer negligence therefrom." Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C., 138 F. Supp. 2d 695, 701 (D. Md. 2001), modified by Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C., 142 F. Supp. 2d 676 (D. Md. 2001).

9

IV.

The district court found that expert testimony was necessary in this case. The district court then correctly concluded that Hall's legal malpractice claim failed because he had not produced expert testimony establishing that the structure of the franchise transaction, as dictated by Hall, was a breach of the standard of care. In fact, the court found that Hall's own expert witness concluded that the structure of the transaction by Sullivan was not a breach of the standard of care. Hall also argues that the district court ignored the further testimony of his expert that Sullivan had erred by improperly drafting the franchise transaction to name Ryan Beck as franchisee of the South Carolina franchise instead of naming Rybeck, Inc., as was intended. Hall argues that, because he held a warrant certificate to Rybeck, Inc., and not to Ryan Beck, his interest in the Columbia franchise was not protected and he was therefore unable to compel Ryan Beck to transfer the franchise on demand pursuant to the warrant certificate. Again, under Maryland law, Hall was required to establish through expert testimony the relevant standard of care for implementation of the franchise transaction. Without an expert establishing to the court's satisfaction the duty of reasonable care of counsel in this business setting, i.e., the standard of care, the court cannot determine whether the alleged error constitutes legal malpractice. Hall's expert failed to do so in this case. See Royal Ins. Co.,

10

138 F. Supp. 2d at 701.  Therefore, the district court properly denied this claim.

V.

Under Maryland law, a plaintiff in a legal malpractice case must also establish that he sustained a loss that was proximately caused by the attorney's breach of a reasonable duty.  See Thomas, 718 A.2d at 1195.  The district court correctly concluded that Hall had not met this burden after analyzing the pertinent documents.

The district court properly construed the Termination Agreement to preserve Hall's rights in the South Carolina franchise and noted that Ryan Beck was not a signatory to the Termination Agreement of the Boston and North Carolina franchises[5].  Moreover, the court found that Hall's rights in the South Carolina franchise were preserved by the July 10, 1998, letter agreement between Smoothie King® and Hall that approved the franchise investment structure.  Accordingly, Hall could step in at any time to take control of the South Carolina franchise.  Therefore, the court found that Hall had the ability to assert his rights on behalf of the South Carolina franchise but declined to do so.  He cannot now claim that he suffered damages for his own failure to assert his rights.

---

[5]This finding blunts Hall's claim that Sullivan erred in naming the South Carolina franchise in the name of Ryan Beck, not RyBeck, Inc.

VI.

For the foregoing reasons, we affirm the judgment of the district court.[6]

AFFIRMED

---

[6]We decline to address any further issues raised by Appellant as they lack merit and are made moot by our holdings herein.